(September 17, 1915.)

## IDAHO–IOWA LATERAL & RESERVOIR COMPANY, LIMITED, a Corporation, Appellant, v. C. C. FISHER, Respondent.

[151 Pac. 998.]

EMINENT DOMAIN—RIGHT TO EXERCISE—RESERVOIRS AND DAMS—CONSTITUTIONAL AND STATUTORY CONSTRUCTION—CONDEMNATION—STATE LANDS—PUBLIC USE—EASEMENT—FEE-SIMPLE TITLE—PROCEDURE TO CONDEMN—LEGISLATURE MAY REGULATE.

1. Under the provisions of an act approved March 18, 1901, (Sess. Laws 1901, p. 191), a person or persons desiring to construct a ditch, canal, reservoir or other works for carrying or distributing public water for any beneficial use over or upon lands owned or controlled by the state are granted the right of way for the same upon a compliance with the provisions of said act.

2. Sec. 8, art. 9, of the state constitution provides that no school lands shall be sold for less than $10 an acre, which lands must be sold at public auction. Said provisions contemplate that the fee-simple title shall be sold for not less than $10 per acre and must be sold at public auction.

3. Under the provisions of sec. 14, art. 1 of the state constitution, the necessary use of lands for the construction of reservoirs or storage basins for the purpose of irrigation is declared to be a public use and subject to the regulation and control of the state.

4. The granting by the state of an easement for a reservoir on school lands under the provisions of said sec. 14, art 1, is not such a sale or disposal of the land as is contemplated by the Admission Act admitting Idaho into the Union of states, nor as contemplated by sec. 8 of art. 9 of the state constitution, and does not convey the legal title to the land; but leaves the fee-simple title in the state.

5. Under the classification of estates and rights in lands subject to be taken for public use as provided by sec. 5211, Rev. Codes, the fee-simple title may be taken for reservoirs and dams and for permanent flooding occasioned thereby. By that classification it was not intended to compel the condemnor to take the title in fee simple, but was intended that the compensation for the land should not be reduced simply because an easement was taken or given rather than a fee-simple title.

6. Under the provisions of said sec. 14 of the constitution it was not intended that, by the subjection of state lands to certain public uses, the title in fee should pass to the condemnor under the eminent domain statutes.

7. When Idaho became a state it had and assumed the power of eminent domain as one of the inalienable rights of its sovereignty, and Congress, when it admitted Idaho into the Union and provided that all school lands granted to the state should not be sold for less than $10 per acre, did not intend to deprive the state of the power of eminent domain. And the state may exercise such right over all state lands, and may grant, in such manner as the legislature may provide, easements for all of the public uses mentioned in said sec. 14, art. I of the state constitution.

8. The necessary use of lands for the construction of reservoirs over state lands is subject to the regulation and control of the state.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Chas. P. McCarthy, Judge.

Action to quiet title to an easement of land for reservoir and dam purposes. Judgment in favor of defendant. *Reversed.*

Cavanah & Blake, for Appellant.

The plaintiff in this case contends that the grant of a right of way for a ditch, canal or reservoir, under sec. 14, art. 1 of the constitution, is not a sale or disposal of the lands, but simply the granting of an easement over the same, the legal title of which remains in the state.

''The right of travel over another's land may be denominated a right of way; it is an easement.'' (*Clawson v. Wallace,* 16 Utah, 300, 52 Pac. 9, 10; *Kripp v. Curtis,* 71 Cal. 62, 11 Pac. 879; *Oswald v. Wolf,* 126 Ill. 542, 19 N. E. 28, 30; *Clayton v. Chicago I. & D. Ry. Co.,* 67 Iowa, 238, 25 N. W. 150; *Appeal of Hoffman,* 118 Pa. 512, 12 Atl. 57; *Cairo V. & C. R. Co. v. Brevoort,* 62 Fed. 129, 25 L. R. A. 527.)

Sec. 14, art. 1, of the constitution is not limited or controlled in any way by the subsequent provisions of the constitution to the effect that school land shall not be sold for less than ten dollars per acre, and that no lands granted to the state by Congress shall be sold otherwise than at public auction.

In the case of *Imperial Irr. Co. v. Jayne,* 104 Tex. 395, Ann. Cas. 1914B, 322, 138 S. W. 575, decided by the supreme court of Texas, almost the identical point involved in this case was passed upon by the court. In the case of *Hollister v. State,* 9 Ida. 8, 71 Pac. 541, this court held that state land could be condemned under the statute relating to eminent domain.

J. H. Peterson, Atty. Genl., E. G. Davis, T. C. Coffin and Herbert Wing, Assts., for Respondent.

As to the issue properly before the court in *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178, namely, the right of the legislature to provide for the alienation at private sale of the state's title to state land, we believe that reason and authority support the decision, but in asking for a reaffirmance of such a principle, we would not be understood as asking this court to reaffirm that decision *in toto.* If we are justified in assuming that the court there decided adversely to the right of the legislature to empower the land board to grant a right, of way, a mere easement over state land for such public uses as ditches, canals, telegraph and telephone lines, electric transmission lines, roads and railroads; if we are justified in assuming that it was there decided that the courts had jurisdiction over state lands, in condemnation proceedings, but that such jurisdiction was limited to the extent that a decree could not be rendered for a less amount than ten dollars per acre, then, even though relying upon that decision as it affects the issues here presented, we urge that the Bridgewood decision went unwarrantably far under the facts presented, and decided questions of great public moment of which no adequate presentation was made to the court.

If by the right of eminent domain on state lands a title less than a fee simple is to be conveyed, and the prohibition against sales other than at public auction at a minimum price of ten dollars per acre applies only where a fee-simple title is to be conveyed, then these two sections of our constitution are reconciled, and both are effective.

The prohibition contained in sec. 8, art. 9, and the right conferred by sec. 14, art. 1, were included in our constitution with the full and complete understanding on the part of the framers of that instrument that an easement, or right of way, over state lands did not operate to divest the state of its title to such lands. Proceedings of the Constitutional Convention, dealing with art. 9, sec. 8, pp. 649, 703, 730, 849 and 1450; affecting art. 1, sec. 14, 288, 1596, 1606.

SULLIVAN, C. J.—This action was brought by the plaintiff, a corporation, to quiet its title to 2.86 acres of the SE. ¼ of the NE. ¼ of sec. 36, Twp. 3 N., Range 1, W. B. M., Ada county, excepting a certain part thereof which is described in the complaint by metes and bounds.

An answer and cross-complaint were filed by the defendant. The answer denied that plaintiff had any right, title or interest whatever in said land, and in the cross-complaint the defendant alleged that he was the owner of said land and entitled to the possession thereof.

Upon the issues thus made the cause was tried by the court without a jury and judgment was entered quieting the title to said land in the defendant. This appeal is from the judgment.

The following facts appear from the record:

The plaintiff is an irrigation company and filed on the land in question as a reservoir site under the provisions of an act of the legislature approved March 18, 1901 (Sess. Laws 1901, p. 191). By sec. 8 of said act it was provided that any person or persons desiring to construct a ditch, canal or reservoir would be allowed a right of way by filing in the office of the state engineer a map showing the location of the land desired for such purpose, without paying any compensation therefor. Plaintiff's filing for said land was made on September 21, 1903, and the plans for the construction of the proposed reservoir of the plaintiff provide for the construction of three dams, one main dam and two minor ones. The main dam was constructed within five years after the date of filing by

plaintiff and one of the minor dams was constructed some nine years after said filing, and the other minor dam has never been constructed.

The defendant's predecessor in interest purchased said land, together with other lands, from the state of Idaho on September 16, 1912, and the court in its finding of facts found that the plaintiff, the reservoir company, did not make application to the state board of land commissioners for the sale of said land; that no appraisal of said land was made, and that the land was not advertised or sold at public auction, and that plaintiff paid no consideration therefor to the state, and that the only things done by the plaintiff to procure the right to the use of said land was the filing of the map, plans and field-notes in the office of the state engineer and the construction work above mentioned.

The court also found that said land described in paragraph 2 of plaintiff's complaint was the identical land proposed to be taken by plaintiff for reservoir purposes and was necessary for the construction of said reservoirs and dams, and after the construction of the main dam said land was necessarily overflowed; that the defendant's predecessor in interest purchased said land together with other lands from the state on September 26, 1912, at public auction, after due notice had been given and proper proceedings had for the sale of said land, and that he paid therefor a sum exceeding ten dollars per acre, and as a conclusion of law the court found that the defendant was the owner and entitled to the possession of said land under a valid certificate of sale from the state of Idaho.

Counsel specifies as error the action of the court in holding that the defendant was the owner and entitled to the possession of said land, and in entering a decree to that effect.

The plaintiff claims title to, or at least an easement in, said land, because of its compliance with the provisions of House Bill 134, Laws 1901, p. 199, which act was thereafter amended in 1907 (Sess. Laws 1907, p. 527), and thereafter became sec. 1635, Rev. Codes of 1909. Said act of 1901 was

amendatory of acts approved respectively March 2 and 6, 1899 (Sess. Laws 1899, pp. 282 and 408).

Sec. 8 of said act of 1901, under which the plaintiff sought to obtain said land for reservoir purposes, is as follows:

"Any person or persons desiring to construct a ditch, canal, reservoirs or other works for carrying or distributing the public waters for any beneficial use over or upon any of the lands owned or controlled by the state of Idaho, shall be allowed the right of way for the same by filing in the office of the state engineer a map showing the location of such land by an accurate survey of such ditch, canal, reservoir or other irrigation works. Such map shall be drawn on tracing linen on a scale of not less than 1,000 feet to the inch, and shall be accompanied by the field-notes of such survey of such irrigation works.

"In the case of a reservoir, the map shall show, by contour lines at intervals not greater than ten feet, the topographic features of such reservoir site, and shall state the capacity of such proposed reservoir in acre feet; and when the dam or embankment of such reservoir shall be more than ten feet in height, plans showing the construction of such dam or embankment shall be filed in the office of said state engineer as provided by law. All such maps, plans and field-notes shall be certified by the engineer under whose direction such surveys and plans were made. If such map or description is defective or incomplete, the state engineer may order the same to be corrected before the same shall be filed in his office: *Provided,* that the works for which the right of way is herein granted must be completed within the time mentioned in the application for the same (which shall accompany such map) which shall in no case be more than five years from the time of filing such application and map; and the construction of the works herein mentioned must be commenced within one year after such application and map are filed, and be prosecuted to completion diligently and uninterruptedly on a scale reasonably commensurate with the magnitude of the proposed works, in order to obtain the right of way under this section."

Plaintiff commenced proceedings under said act on September 21, 1903, to obtain the right to said land for reservoir purposes. In 1907, said sec. 8 was amended, but the only material change made was that of requiring compensation or at least $10 per acre for land desired as a reservoir site, while under the act of 1901 the necessary estate in said land required for reservoir purposes was granted by the state without compensation.

The points presented for decision are: (1) Could the plaintiff obtain title or the necessary estate or easement in said land for reservoir purposes by compliance with said law of 1901, and if so, (2) did the plaintiff comply with the provisions of said act?

It is contended that the proviso contained in sec. 8, art. 9 of the state constitution, to wit, "No school lands shall be sold for less than ten dollars per acre," and such sale must be made at public auction, applies only to the divesting of the entire or fee-simple title of the state thereto, and that any estate in school lands less than a fee simple is not included in that constitutional provision; that sec. 14, art. 1 of the state constitution which grants the right of eminent domain, cannot apply to school lands if the constitutional provision of sec. 8, art. 9, includes rights of way, easements and other estates less than the fee-simple estates.

Sec. 8, art. 9 of the state constitution is as follows:

"It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor; *Provided,* that no school lands shall be sold for less than ten (10) dollars per acre. No law shall ever be passed by the legislature granting any privileges to persons who may have settled upon any such public lands, subsequent to the survey thereof by the general government, by which the amount to be derived by the sale or other disposition of such lands, shall be diminished, directly or indirectly. The legislature shall at the ear-

liest practicable period, provide by law that the general grants of land made by Congress to the state, shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of lands were made, and the legislature shall provide for the sale of said lands from time to time and for the sale of timber on all state lands and for the faithful application of the proceeds thereof in accordance with the terms of said grants; *Provided,* that not to exceed twenty-five sections of school lands shall be sold in any one year, and to be sold in subdivisions of not to exceed one hundred and sixty (160) acres to any one individual, company or corporation.''

Sec. 14, art. 1, is as follows:

''The necessary use of lands for the construction of reservoirs, or storage basins, for the purpose of irrigation, or for rights of way for the construction of canals, ditches, flumes or pipes, to convey water to the place of use for any useful, beneficial or necessary purpose, or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps or other necessary means to their complete development, or any other use necessary to the complete development of the material resources of the state, or the preservation of the health of its inhabitants, is hereby declared to be a public use, and subject to the regulation and control of the state.

''Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor.''

The provisions of said two sections must be construed to harmonize. Said sec. 8 prescribes the price and manner of sale of state lands; sec. 14 confirms the right of eminent domain. A conflict must necessarily result between the provisions of said sections if sec. 8 is construed to include the particular title or estate in land which, under section 14, is subject to the control of the state for a public use. If the provisions of said section 8 fixing the price and prescribing the manner of sale of state lands refer to easements and

rights of way and prohibit the granting of such easements or rights of way for a price less than ten dollars an acre, and then only at public auction, can it be said that the provision of said section 14 giving the state control of such lands for public uses is not violated when the subjection of such lands to a public use is sought?

To exercise the right of eminent domain involves a judicial proceeding, and if after the court has determined the right to condemn, the land must be put up at public auction and sold for not less than ten dollars an acre, the condemnors would be placed in the position of not only having to pay the value of the land found by the court, but also must overbid at public auction anyone who might bid for said lands. The law of eminent domain only contemplates that the condemnor shall pay the price for the land fixed by the court, and he is not required to attend an auction sale where such land is put up at public vendue.  For instance, if a person or company desires to establish a reservoir for impounding water for the reclamation of lands and the land suitable for such reservoir must be purchased at public auction, speculators by bidding on such land might greatly retard the development of the country.

Under the provisions of said sec. 14, it is provided that the necessary use of lands for the construction of reservoirs is declared to be a public use subject to the regulation and control of the state.

Under an act of Congress of July 26, 1866, 14 Stats. at L., p. 261, which was re-enacted in Rev. Stats. of the U. S. in sec. 2339 and somewhat amended but the meaning thereof not changed by such amendment, the right of way for the construction of ditches and canals over the public domain is acknowledged and confirmed.  Congress recognized the fact that the rights of way for ditches, reservoirs and canals in the arid states and territories of the west were absolutely essential for the development of those states and territories, and while the act of Congress admitting Idaho into the Union provides that none of the lands granted by said act to the state should be sold except at public sale and for not less than

ten dollars an acre, it was not intended that such act should be construed to be in contravention of the wise policy adopted by Congress by the act of 1866, and prevent the irrigation and reclamation of the arid lands of the state.

It is clear that the granting of a right of way for a ditch, canal or reservoir under the provisions of sec. 14, art. 1 of the state constitution is not a sale or disposal of the land such as is contemplated by said admission act, but simply the granting of an easement, the legal title to the land remaining in the state.

Sec. 5211, Rev. Codes, which is found in the chapter on eminent domain, provides as follows:

"The following is a classification of the estates and rights in lands subject to be taken for public use:

"1. A fee simple, when taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine;

"2. An easement, when taken for any other use;

"3. The right of entry upon, and occupation of, lands, and the right to take therefrom such earth, gravel, stones, trees and timber as may be necessary for some public use."

This section was adopted in 1881, nine years or more prior to the adoption of our constitution. It classifies the estates and rights in land subject to be taken for a public use, and provides that a fee-simple title may be taken in the land for reservoirs and dams and permanent flooding occasioned thereby. But under the provisions of the constitution which clearly contemplate the subjection of state lands to certain public uses, the title in fee does not pass to the condemnor under eminent domain or other proceedings provided by the legislature for the subjection of state lands to public uses. It was intended in such classification not to have the compensation to be paid for land for reservoir or dam purposes reduced simply because an easement was taken or given rather than the fee-simple title, since it might be a perpetual easement or only temporary. If the land was abandoned and not

used for the purposes for which it was condemned, the land was relieved of such easement and the owner of the fee would become entitled to the full possession thereof.

If it be held under the provisions of sec. 8, art. 9 of the constitution that state lands under condemnation proceedings must not be sold for less than ten dollars an acre, must it not also be held that state lands for that purpose must be sold at public auction? Shall this court construe that, in taking state lands for a public use, one of said provisions is binding and the other not? By holding that said provisions of sec. 8 are applicable when the state parts with the fee and not where it grants an easement, the sections of the constitution in regard to the sale of school lands and of eminent domain can be made effective and harmonious, and the material development of the state not hampered or retarded in the reclamation of the land belonging to the state as well as other desert land within the state.

In *Hollister v. State,* 9 Ida. 8, 71 Pac. 541, the court said:

"When Idaho became a state, it at once necessarily assumed the power of eminent domain, one of the inalienable rights of sovereignty; and that right, we take it, may be exercised over all property within its jurisdiction. [Numerous authorities are here cited.] But even if Congress had the authority in granting these lands to the state, to restrict and prohibit the state in the exercise of the power of eminent domain, we do not think it was intended or attempted in the admission act. It was evidently the purpose of Congress in granting sections 16 and 36 in each township to the state for school purposes to provide that the revenue and income from all such lands should go to the school fund, and that when sold it should be at the highest market price. We cannot believe that Congress meant to admit into the Union a new state, and by that very act throttle the purposes and objects of statehood by placing a prohibition on its internal improvements. To prohibit the state the right of eminent domain over all the school lands granted would lock the wheels of progress, drive capital from our borders, and in many instances necessitate settlers

who have taken homes in the arid portions of the state seeking a livelihood elsewhere."

As a matter of history considerable land in the state of Idaho that has heretofore been reserved for reservoir purposes has already been abandoned, and that will be the case, no doubt, in regard to some of the lands now used as reservoirs. It is clear that where the right of eminent domain is exercised with reference to state lands, if it be held that a title less than fee simple is to be conveyed by such proceedings, and if at the same time the constitutional prohibition against sales other than at public auction at a minimum price of ten dollars per acre be construed to apply only where a fee-simple title is to be conveyed, then the two sections (sec. 14, art. 1, and sec. 8, art. 9) are reconciled, and both are made effective. It ·was not intended that a fee-simple title must be taken in case land is condemned for a reservoir, and in the case of condemnation of state lands it was clearly not intended that a fee-simple title should be taken to land for that purpose. If it were intended by the provisions of section 5211 to compel the condemnor to take the fee-simple title to land desired for a reservoir, it is clearly repugnant to the provisions of the constitution so far as reservoir, dam sites, etc., are concerned when applied to state lands.

Sec. 14, art. 1, of the constitution does not provide that the fee-simple title for state lands used as reservoirs must be taken, but does provide that "The necessary use of lands for the construction of reservoirs" shall be "subject to the regulation and control of the state," meaning thereby that such matters shall be controlled by the legislature of the state by legislative enactment.

It was held in *Imperial Irr. Co. v. Jayne*, 104 Tex. 395, Ann. Cas. 1914B, 322, 138 S. W. 575, that the legislature had the power to exercise the right of eminent domain confided to it by the people and forever reserved to it by implication, and for a public use might grant an easement on any of the state's lands for rights of way for railroads, telegraphs and telephone companies and for dams and reservoir sites, and held that the power was inherent in the sovereign government, and

that the exercise of that power did not deprive the legislature of its authority to sell the land on which such easements were granted, for the title in fee did not pass by the grant of the easement, and said: "The construction of the constitution here given is wholly in aid of the power of the legislature to sell the public school lands for the best price and to the best advantage, and in no manner recognizes the authority to divert or misappropriate any portion of that fund." While there is a distinction between the laws of Texas and the laws of Idaho, the distinction is one of form rather than of substance, and the general rule laid down there is applicable in this case.

The legislature in this state in dealing with the procedure for the taking of state lands for a public use may provide that such procedure may be taken in certain designated courts, or it may provide that the procedure of taking lands for public use may be had outside of the courts in the first instance. The procedure which the legislature may adopt is not necessarily limited to the courts, since the right of eminent domain is an inalienable right of sovereignty; and the legislature has the power to provide the way in which or by which this right may be exercised. Under our law, when land is taken for a public highway, appraisers are appointed to appraise the value of the land sought to be taken and no court procedure is required, and the legislature may provide any reasonable method whereby the rights of the parties will be protected in the exercise of the right of eminent domain.

The discussions which occurred in the Constitutional Convention dealing with school lands throw considerable light upon the proper construction to be placed upon said section and will be found in vol. 1, Idaho Const. Convention, pp. 649–669, 703–712, 730–765, 849, and vol. 2, p. 1450; and the discussion affecting sec. 14, art. 1, will be found in vol. 1, pp. 288–367, and vol. 2, pp. 1596–1602, 1606–1633.

The discussions in regard to said section 14 clearly indicate that the leading members of the Constitutional Convention had in mind the granting of easements for the purposes referred to in said section, and during the discussion the word

"easement" was used a number of times, which indicates that the fee-simple title to lands taken for a public use was not in contemplation by the framers of said section 14. The first sentence of said section clearly indicates that easements were considered rather than the fee-simple title to the land. The sentence begins: "The necessary use of lands for the construction of reservoirs," etc., and at page 1619, vol. 2, Idaho Const. Convention, Judge Claggett, referring to the word "use" as used in said section, stated as follows: "If you were to strike out 'use,' by the way, from this section and put in 'easement,' it would be precisely the same thing in principle and in effect." And again, referring to said section, in vol. 1, p. 311, he said: "I think so far as the substitute is concerned, that that substitute can be amended in such a way as to provide for easements upon lands for those purposes, and leave the lands alone and let the title rest in them. An easement that will carry water over a party's land, an easement to build a ditch across a man's claim, an easement to go over a man's claim when necessary—all of which would be provided by the legislature, under the safeguards there put in—or a temporary possession for the purpose of sinking a shaft or running a tunnel—these things are absolutely necessary to be done, and I think the language of the substitute should be modified so as to cover any matters of this kind, to cover these matters of easement."

At least so far as some members of the convention were concerned, the rights sought to be granted by the provisions of sec. 14, art. 1 of the constitution were easements and not fee-simple titles, and it was intended that the just compensation for those easements must be paid, and if thereafter such lands were abandoned or ceased to be used for the purposes for which they were condemned, the title would remain where the law would leave it, in the owner of the fee, regardless of such condemnation proceedings.

While the writer of this opinion in his dissenting opinion in the case of *Hollister v. State*, 9 Ida. 651, 77 Pac. 339, took the position that a fee-simple title was taken of the land upon which the dam in that case was erected, upon further investi-

gation of the matter I am satisfied that, under the provisions of sec. 14, art. 1 of the constitution, only the necessary use of land for reservoir or dam purposes is taken, which may result in the perpetual use of such lands for that purpose, or only a temporary use, and the title in fee to the land remains in the state.   In the case of *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178, it was held that an inhibition is placed upon the legislature in enacting a law which provides for the disposition of lands granted to the state by an act of Congress for less than ten dollars per acre, and that such sale shall be at public auction.   The court in that decision proceeded upon the theory that the fee-simple title was taken or disposed of by the state for the public use therein mentioned; and the doctrine therein laid down that is contrary to the views expressed in this opinion is hereby expressly overruled.

We, therefore, conclude that the plaintiff obtained an easement in the land in question for reservoir purposes by compliance with the act of 1901.

The judgment of the trial court is therefore reversed and the cause remanded, with instructions to make finding of facts and enter judgment in favor of the plaintiff quieting its right to an easement for reservoir and dam purposes to the land involved in this case.   Costs are awarded to the appellant.

MORGAN, J., Concurring.—I concur in the conclusion reached by the Chief Justice, but do so upon the ground that sec. 8 of the act of 1901 under consideration provides only for taking an easement or right of way upon or across school lands.   It does not provide for the sale or leasing of such lands and is not, therefore, in contravention of sec. 8, art. 9 of the constitution, nor does it violate the prohibitive provisions of the act of Congress granting school lands to Idaho. It does not appear to me that the right or power of eminent domain is involved in this case.

BUDGE, J., Dissenting.—I cannot agree with the conclusions reached by my associates in this case, because, in my opinion, the identical question involved has been squarely

passed upon, and rightly so, by this court, in the case of *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178.

The complaint in this case, among other things, alleges: "That the plaintiff is now, and for a long time hitherto has been, the owner, in the possession of, and entitled to the possession of that certain lot, piece or parcel of land situate, lying and being in the county of Ada and state of Idaho, and bounded and described as follows, to wit." Then follows a description of the particular piece or parcel of land by metes and bounds containing 2.86 acres more or less. The complaint continues:

"That the said defendant claims an estate or interest therein, adverse to the said plaintiff.

"That the claim of the said defendant is without any right whatever, and that the said defendant has not any estate, right, title or interest whatever in said land or premises or any part thereof."

Then follows the prayer, wherein the plaintiff asks:

"That the defendant may be required to set forth the nature of his claim, and that all adverse claims of the defendant may be determined by the decree of this court.

"That, by said decree, it be declared and adjudged that the defendant has no estate or interest whatever in or to said land and premises; and that the title of plaintiff is good and valid.

"That the defendant be forever enjoined and debarred from asserting any claim whatever in or to said land and premises, adverse to the plaintiff, and that the plaintiff have such other relief as to this honorable court shall seem meet and agreeable to equity, together with the costs of suit."

The defendant answered, and also filed a cross-complaint, in which he admits the formal allegations of the plaintiff's complaint, that is to say, that the plaintiff is a corporation duly organized and existing under and by virtue of the laws of the state of Idaho, with its principal place of business at Boise, Idaho; but denies that the plaintiff is now, or ever has been, the owner, in the possession of, or entitled to that certain lot, piece or parcel of land, or any part thereof described in the plaintiff's complaint, being the land heretofore referred

to. And alleges that he, the said defendant, is the owner of said property above referred to; and denies that his claim to the ownership of said property is without any right, or that he has no estate, right, title or interest in and to said land or premises, or any part thereof.

In his cross-complaint he alleges:

"That he is the owner of, and entitled to the possession of the SE. ¼ of NE. ¼ of section 36, Twp. 3 N., R. 1 W., B. M., and that he bases his title upon a sale certificate numbered 5028 from the state of Idaho to J. N. Kerr, which said certificate was duly assigned to this defendant and cross-complainant.

"That the plaintiff claims an estate or interest therein adverse to the said defendant and cross-complainant.

"That the claim of said plaintiff is without any right whatever, and that the said plaintiff has not any estate, right, title or interest whatever in said land or premises, or any part thereof."

And the defendant prays:

"That he be dismissed hence without day as to said complaint, and recover his costs in this behalf sustained.

"That the plaintiff may be required to set forth the matter of his claim, and that all adverse claims of said plaintiff may be determined by decree of this court.

"That by said decree it be declared and adjudged that the plaintiff has no estate or interest whatever in or to said land and premises, and that the title of the said cross-complainant is good and valid.

"That the plaintiff be forever enjoined and debarred from asserting any claim whatever in or to said land and premises adverse to the defendant and cross-complainant, and that the cross-complainant have such other and further relief as to the court may seem just and equitable, together with the costs of this action."

Upon the issues thus raised a stipulation of the facts was made by counsel for the respective parties, which is as follows:

"It is hereby stipulated by and between the attorneys for the respective parties in the above-entitled action that the following facts therein are true:

"On the 26th day of April, 1912, O. O. Haga, made application to the State Board of Land Commissioners of the State of Idaho for the sale of the NE. ¼ of Sec. 36, Twp. 3 N., R. 1 W., B. M., all of said land being situate in Ada County, Idaho.

"That pursuant to such application the said State Board of Land Commissioners caused the land above set forth to be appraised, and said land was found by such appraisement to be of the value following, to wit, $25.00, per acre.

"That thereafter the said State Board of Land Commissioners caused said land to be advertised for sale by publishing a notice thereof in the *Idaho Weekly Statesman,* a weekly paper published in Boise, Ada County, Idaho, said paper being published in the same county in which the land is situate, and a copy of which said publication is annexed hereto as Exhibit 'A,' and made a part hereof for a more particular statement of the matters and things appearing therein.

"That pursuant to such notice of sale the said land was offered at auction at the Courthouse at Boise, Idaho, on the 16th day of September, 1912, and J. N. Kerr, a citizen of the United States, being the highest and best bidder therefor, became the purchaser of the SE. ¼ NE. ¼ of Sec. 36, T. 3 N., R. 1 W., B. M., and received Sale Certificate No. 5028.

"That thereafter and prior to the commencement of this action the said J. N. Kerr duly assigned all his right, interest and estate in and to said land last above described, under and by virtue of said Sale Certificate No. 5028 to C. C. Fisher, the defendant herein.

"That all the proceedings necessary for the sale of the above-described land were regular and substantially conformed to the statutes of the State of Idaho in such cases made and provided.

"That all payments which have been due or become due under said sale certificate No. 5028 have been made by the defendant herein, C. C. Fisher, or his predecessors in interest, and no forfeiture of said sale certificate has ever been declared by the State Board of Land Commissioners of Idaho.

"That the plaintiff is now and at all the times mentioned in the complaint herein, was a corporation duly organized and existing under and by virtue of the laws of the State of Idaho, with its principal place of business at Boise, Idaho.

"That on or about the 21st day of September, 1903, the plaintiff, for the purpose of constructing a reservoir to store water for the irrigation of arid lands within Ada County, Idaho, filed in the office of the State Engineer of the State of Idaho a map showing the location of the land necessary for the purpose of such reservoir by an accurate survey of said reservoir, such map being on tracing linen on a scale of not less than 1,000 feet to the inch, and was accompanied by field-notes of such survey of such reservoir. Said map showed by contour lines at intervals, not greater than ten feet, the topographic features of such reservoir site, the capacity of such proposed reservoir in acre-feet and said company filed plans showing the construction of the same required for such reservoir, said map, plans and field-notes were certified by the Engineer under whose direction such survey and plans were made; said map, plans and field-notes were approved by the State Engineer of the State of Idaho, on the 22d day of September, 1903.

"That the land described in paragraph two of the complaint herein is the identical land proposed to be taken by said company for reservoir purposes, and is the land described in the application and map above referred to, and is necessary for the construction of said reservoir, and ever since the completion of said reservoir said land has been necessarily used for such reservoir."

The trial court made findings of fact from which, omitting the formal parts and avoiding a repetition of some of the facts heretofore referred to in the complaint of the plaintiff and in the answer and cross-complaint of the defendant, as well as in the stipulation of counsel, we have extracted the following:

"That on or about the 21st day of September, 1903, the plaintiff for the purpose of constructing a reservoir to store water for the irrigation of arid land within Ada County, Idaho, filed in the office of the State Engineer of the State

of Idaho a map showing the location of land necessary for the purpose of such reservoir by an accurate survey of said .reservoir, such map being on tracing linen. . . . . Said map, plans and field-notes were certified by the engineer under whose direction such surveys and plans were made; said map, plans and field-notes were approved by the State Engineer of the State of Idaho, on the 22d day of September, 1903. . . . .

"That the plaintiff did not make application to the State Board of Land Commissioners of the State of Idaho for the sale of the lands proposed to be taken by said company for reservoir purposes; that no appraisal of said land was made, and that no sale of said land was advertised or made at public auction or otherwise.   That the plaintiff did not pay any consideration to the State of Idaho for said lands or the right to use the same for reservoir purposes or at all.   That the only proceedings or actions on the part of the said plaintiff to procure a right to use said land for reservoir purposes was the filing of said map, plans and field-notes in the office of the State Engineer of the State of Idaho. . . . .

"That on the 26th day of April, 1912, O. O. Haga made application to the State Board of Land Commissioners of the State of Idaho for the sale of the NE. ¼ of Sec. 36, Twp. 3 N., R. 1 W., B. M., all of said land being situate in Ada County, Idaho.

"That pursuant to such application the said State Board of Land Commissioners caused the land above set forth to be appraised, and such land was found by said appraisement to be of the value of Twenty-five Dollars ($25.00) per acre.

"That thereafter the said State Board of Land Commissioners caused said land to be advertised for sale by publishing a notice thereof in the *Idaho Weekly Statesman*, . . . .

"That pursuant to such notice of sale, the said land was offered at public auction in the courthouse at Boise, Idaho, on the 16th day of September, 1912, and J. N. Kerr, a citizen of the United States, being the highest and best bidder therefor became the purchaser of the SE. ¼ of NE. ¼ of Sec. 36, Twp. 3 North, Range 1 West, B. M., and received sale certificate No. 5028.

"That thereafter, and prior to the commencement of this action, the said J. N. Kerr, duly assigned all his right, interest and estate in and to said land, above described, under and by virtue of said sale certificate No. 5028, to C. C. Fisher, the defendant herein.

"That all the proceedings necessary for the sale of the above-described land were regular and substantially conformed to the statutes of the State of Idaho in such cases made and provided.

"That all payments which have been due, or become due, under said sale certificate No. 5028, have been made by the defendant herein, C. C. Fisher, or his predecessor in interest, and no forfeiture of said sale certificate has ever been declared by the State Board of Land Commissioners of the State of Idaho."

In its conclusions of law from the foregoing facts, the court held:

"That the defendant, C. C. Fisher, is the owner of and entitled to the possession of the land described in paragraph II of the complaint as against plaintiff herein, and that the said defendant C. C. Fisher, is the holder of a valid certificate of sale for the said land from the State of Idaho."

From the foregoing recitals the issues between the parties can properly be said to resolve themselves into two propositions; First, the rights of the defendant, if any he has, are based upon a certificate of purchase of the land in question in accordance with the statutes of this state providing for the sale of state lands; second, the plaintiff and appellant bases its rights and title to the land in question upon the filing in the office of the state engineer on September 21, 1903, of a map in accordance with the provisions of sec. 8, House Bill 134, Sess. Laws of 1901, page 199, which statute provides for the acquiring of a reservoir site upon state lands.

It might be conceded, for the purpose of disposing of this case, that the plaintiff and appellant fully complied with all of the provisions of the aforesaid act; and it is not disputed that the defendant and his predecessor in interest received by purchase from the state whatever title the state had to

convey at the date of the sale of the lands above described, to wit, September 6, 1912. But could plaintiff, by a full compliance with sec. 8, House Bill 134, Sess. Laws, 1901, p. 199, obtain title to the land in question, or a perpetual easement thereon, for a reservoir site? I think not.

Sec. 4 of the Idaho Admission Bill, found at page 54, vol. 1, Rev. Codes, provides:

"That sections numbered 16 and 36 in every township of said State, and where such sections or any parts thereof, have been sold or otherwise disposed of by or under the authority of any Act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one-quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said State for the support of common schools, such indemnity lands to be selected within said State in such manner as the Legislature may provide, with the approval of the Secretary of the Interior."

Section 5 of that act, on same page, provides:

"That all lands herein granted for educational purposes *shall be disposed of only at public sale*, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years, and such lands shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

Sec. 8, art. 9 of the Idaho constitution, provides:

"It shall be the duty of the State Board of Land Commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be, granted to the State by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the *maximum possible amount therefor: Provided, That no school lands shall be sold for less than ten (10) dollars per acre.* No law shall ever be passed by the Legislature granting any privileges to persons who may have settled upon

any such public lands, subsequent to the survey thereof by the general government, by which the amount to be derived by the sale, or other disposition of such lands, shall be diminished, directly or indirectly.  The Legislature shall, at the earliest practicable period, provide by law that the general grants of land made by Congress to the State shall be judiciously located and carefully preserved and *held in trust,* subject to disposal at public auction for the use and benefit of the respective objects for which said grants of lands were made, and the Legislature shall provide for the sale of said lands from time to time and for the sale of timber on all State lands and for the faithful application of the proceeds thereof in accordance with the terms of said grants: *Provided,* that not to exceed twenty-five sections of school lands shall be sold in any one year, and to be sold in subdivisions of not to exceed one hundred and sixty (160) acres to any one individual, company or corporation.''

Sec. 11, Idaho Admission Bill, *supra,* after enumerating the various grants made by Congress to the state for the establishment and maintenance of a scientific school, normal schools and various other institutions, provides that ''None of the lands granted by this act shall be sold for less than $10 an acre.''

The Sess. Laws of 1901, p. 199, under which plaintiff and appellant claims to have initiated its right to the state land in question, were amended by the Sess. Laws of 1907, p. 527. But upon investigation, it will be found that the only material change made by the amendment of 1907 was that the act required compensation for state lands for reservoir purposes or rights of way, etc., of at least ten dollars an acre; whereas, the 1901 Session Laws made no such requirement, and, as plaintiff and appellant contends, the necessary estate in the land was granted free upon compliance with the statute in the filing of maps in the office of the state engineer, etc.

I take the position that sec. 8, House Bill 134, Sess. Laws, 1901, p. 199, was in contravention of sec, 8, art. 9 of the constitution, and was, therefore, void.  And this court held in *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178, that the

amendment to said section 8 of the 1901 Sess. Laws, contained in the Sess. Laws 1907, p. 527, was void. Consequently all the proceedings pursued in accordance with sec. 8, House Bill 134, *supra,* by the plaintiff and appellant, in order to secure a permanent right to the reservoir site involved in this litigation were without any force or effect.

In the case of *Tobey v. Bridgewood, supra,* Tobey received from the state board of land commissioners, after payment of the necessary amount of money, a deed to certain state land to be used as a reservoir site under the provisions of said Session. Laws of 1907, *supra.* The negotiations between Tobey and the land board consisted simply of an application on the part of Tobey, payment by him of $87.20, and the issuance of a deed by the board; no advertisement or other notice of sale having been given, and the sale not having been made at public auction. The question presented to the court was: What title, if any, did Tobey receive by such proceedings? The act of 1907 expressly provides that the state board of land commissioners, upon compliance with the terms of the act, might grant land for reservoir sites, rights of way, etc. The authority of the state board of land commissioners, under said act, to make a deed of conveyance of state lands to an individual for reservoir site, without such land being obtained by purchase at public auction, was directly involved. This court at that time, in construing sec. 8, art. 9 of the constitution, among other things, said:

"These constitutional provisions provide who shall constitute the state board of land commissioners, and the power and authority vested in said board, in granting such board the direction, control and disposition of the public lands of the state, *under such regulation as may be prescribed by law;* it is also provided in said section 8 that the legislature shall, 'at the earliest practicable period, provide by law that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved and *held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were*

*made, and the legislature shall provide for the sale of said lands from time to time.' ''*

The general grants of land by Congress to the state are held in trust, *subject to disposal at public auction.* This being true, the legislature is prohibited from enacting any law which provides for the disposition of lands granted to the state by an act of Congress in any other manner than as expressly provided in the act of admission and in the constitution; that is, by sale at public auction. The state board of land commissioners may lease any portion of the state land at a certain fixed rental and for a specified time, but it is not authorized, under the constitution or statutes of this state, to impair the title to state lands as was done in this case.

I am of the opinion that it was never intended by the legislature to provide for a method or system of disposing of or encumbering lands belonging to the state; or to permit the right to enter upon state lands or occupy the same for the purpose or use as a reservoir, or for any other purpose, except such right is obtained under the provisions of the constitution and the statutory laws of this state. The constitution and laws of this state absolutely prohibit the state board of land commissioners to dispose of the state lands in any other way than by sale at public auction, or by leasing them for a period of not to exceed five years.

It is argued in this case, as it was in the *Tobey v. Bridgewood* case, ''that if the power of the state board of land commissioners is limited by the constitution and the statute to the disposition of state lands by lease and sale only, it will annul the action of the state land board in many transactions that have been made in the state in relation to the granting of easements for ditches and also the disposal of state lands for reservoir and power sites and other public works, . . . . it will retard and prevent the development of many industries in this state and the construction of works and improvements which contribute to the development and improvement of the lands, not only of this state, but likewise the lands that may be settled upon or improved under the laws

of the United States. . . . . As announced by this court in the case of *Pike v. State Land Board, supra* [19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447] : 'As a matter of policy and business expediency this argument might appeal to the board, but it cannot be considered by this court.' . . . . The question of policy and business expediency which may have been pursued by the state board in the past, and which might be pursued in the future, should not control or guide this court in upholding and sustaining a policy, where such policy is absolutely prohibited by the provisions of the constitution and the laws of this state.''

It is concluded in the majority opinion of this court that not a fee-simple title to the state lands in question, but only a right to the use of the same for reservoir purposes, is conveyed to the plaintiff and appellant; and, therefore, the constitutional provision above quoted and the statutes cited do not apply. In my opinion there is no merit in this conclusion. Sec. 5211, Rev. Codes, contains a classification of the estates and rights in lands subject to be taken for public use. The first subdivision is as follows:

''1. A fee-simple, when taken for public buildings or grounds, or for permanent buildings, for *reservoirs and dams and permanent flooding occasioned thereby,* or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine; . . . . ''

The taking of the state land in question for reservoir purposes is in effect and under the above-quoted statute the acquiring of a fee-simple title to said lands, and it is not the creation of an easement only.

The state board of land commissioners has no authority, under the constitution, to impair the title to state lands; but, on the contrary, it is their duty ''to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be, granted to the State by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor.'' In the case at bar, the plaintiff and appellant made the state no compensation for the land in

question, but it became entitled to the possession of the same for reservoir purposes by a gift. If it is within the power of the state board of land commissioners to give away even this small amount of state land, there is no reason in principle why, for the same or like purposes, that board could not give away as much of the state lands as may be applied for; and thereby defeat the very purpose and object of the constitution and statutes in this, that instead of securing the maximum possible amount for state lands, they would receive no compensation at all for the same. This court held in the case of *Balderston v. Brady,* 17 Ida. 567, 579, 107 Pac. 493, that "Any gift of school or other state lands or relinquishment of the state's title is in violation of the fundamental laws of the state and would be void."

The question of eminent domain is not involved in this case. The plaintiff and appellant did not seek to condemn the land in question for a reservoir site. Therefore, a discussion of that question is outside of this case and wholly immaterial to a determination of the issues involved.

The judgment of the trial court should be sustained under the constitution and statutes of this state and the decisions of this court heretofore rendered.