**UNITED STATES v. FULLER et al.**

District Court, D. Idaho, S. D.

Sept. 10, 1937.

B. E. Stoutemyer, of Portland, Ore., and John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Dist. Attys., all of Boise, Idaho.

J. P. Reed, of Emmett, Idaho, for defendant Fredrick J. Fuller.

J. W. Taylor, Atty. Gen., and E. G. Elliott and Lawrence B. Quinn, Asst. Attys. Gen., for the State of Idaho.

CAVANAH, District Judge.

The United States brings this action under an act of Congress granting jurisdiction to the federal courts to procure a declaratory judgment, and asserting that an actual controversy has arisen between it and the defendants as to the validity of an easement and right of way over and across lands of the defendant Fuller for the con-

struction of a canal by the government for the irrigation of the Payette division of the Boise project—Black Canyon District.

The defendants are successors in interest of the parties to whom the State of Idaho sold the land subsequent to the enactment of the Act of the State Legislature of 1905, p. 373, which provides: "There is hereby granted over all the lands now or hereafter belonging to the state, a right of way for ditches, tunnels and telephone and transmission lines, constructed by authority of the United States. All conveyances of state lands hereafter made shall contain a reservation of such right of way." Section 56-504, I.C.A. The constitutionality of that statute is the principal question involved and the issue is presented by demurrer to the bill.

The contractor of the United States, in the construction of the canal, has reached the premises of the defendant Fuller, who has threatened and ordered him not to enter upon the same.

The land came to the State under the Admission Act of Congress approved July 3, 1890 (26 Stat. 215), and is classed as school land. The Constitution of the State, which was approved by Congress, was adopted August 6, 1889.

Defendants urged that the exclusive power to control and dispose of public lands of the State or the right of protection, sale, and rental thereof are vested in the Board of Land Commissioners of the State and not in the State Legislature. The provisions of the State Constitution relied upon are sections 7 and 8 of article 9, where it is provided:

Section 7. "The governor, superintendent of public instruction, secretary of state, attorney general and state auditor shall constitute the state board of land commissioners who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law."

Section 8. "It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor: provided, that no school lands shall be sold for less than ten dollars per acre."

Section 12 of the Admission Act (26 Stat. 217) provides: "And the lands granted by this section shall be held, appropriated, and disposed of exclusively for the purpose herein mentioned, in such manner as the legislature of the State may provide."

The argument is stressed by the defendants that under the Constitution of the State no power is granted to the Legislature to dispose of public land of the State, as that power is vested in State Board of Land Commissioners, and the Legislature is restricted to prescribing the method and manner the land can be handled. While the answer of the United States is that the granting of a mere right of way or easement is not a sale or grant of land as was contemplated under the restrictive provision of the State Constitution as to a sale or grant of State land, as it only applies to the transfer of fee title. These two diverse constructions of the State Constitution and whether the United States in the Admission Act reserved rights of way or easements over the land passed to the State, whenever the Legislature of the State grants the same, for canals or ditches as may be needed to effect the irrigation of the land which the project is intended to reclaim, is the crucial question here.

With these pertinent provisions of the State Constitution, the Admission Act, and the act of the Legislature of 1905 in mind, we approach a determination of what is a correct interpretation of them when considering the constitutionality of the act of 1905. If the granting of a right of way by the act of 1905 for ditches over lands belonging to the State, constructed by authority of the United States, is not a sale or disposal of the land as is contemplated by the Admission Act nor by section 8, article 9, of the State Constitution, then the restrictive provisions of the State Constitution vesting in the State Board of Land Commissioners exclusive power as to the sale of land would not apply, for we find in both the Constitution of the State and the Admission Act restrictive provisions relating to the disposition and sale of the land "in such manner as the legislature of the State may provide," section 12 of Idaho Admission Act, and "under such regulations as may be prescribed by law," sections 7 and 8, article 9, State Constitution. The manner prescribed by the Legislature in the disposal

of land belonging to the State is that all conveyances shall contain the reservation of a right of way for ditches constructed by authority of the United States and does not convey the fee-simple title to the land. The right of way or easement there provided, when used for the purposes of a ditch conveying water, would cease to exist when the United States ceased to use it for such purposes. Under such provision in the State Statute the fee-simple title to the land is never conveyed to the United States.

Under the Act of Congress of July 26, 1866, 14 Stat. page 253, § 9 (43 U.S.C.A. § 661), the right of way for the construction of ditches over public domain is acknowledged and confirmed. This act was in force at the time of the adoption of the Admission Act and Constitution of Idaho, and, if we give the meaning of the words "under such regulations as may be prescribed by law" to mean what the Act of Congress of July 26, 1866, provided, that the law at the time the land passed to the State provided a right of way for the construction of ditches over the public domain, and give the meaning of the words "under such regulations as may be prescribed by law" found in the State Constitution, it would seem clear that both the Admission Act and the State Constitution recognizes the right in Congress and the State Legislature in granting rights of way for ditches by authority of the United States over land belonging to the State.

 An interpretation of section 8, article 9, of the Idaho Constitution was made by the Supreme Court of the State in the case of Idaho-Iowa Lateral & Reservoir Co. v. Fisher, 27 Idaho 695, 151 P. 998, to the effect that where the State granted an easement for a reservoir on school lands under the provision of the Act of the State Legislature of 1901 (Laws Idaho 1901, p. 191) is not such a sale or disposal of the land as contemplated by the Admission Act nor by section 8 of article 9 of the State Constitution, for the reason that it "does not convey the legal title to the land; but leaves the fee-simple title in the state." The situation in that case is similar to the one here where it is here urged that the power to grant an easement over State lands is in the Board of Land Commissioners under section 8, article 9, of the State Constitution and not in the Legislature of the State, for it seems that in the Fisher Case the Legislature in

1901 adoped an act that those "desiring to construct a ditch, canal, or reservoir would be allowed a right of way by filing in the office of the state engineer a map showing the location of the land desired for such purpose, without paying any compensation therefor," and the State Supreme Court reached the conclusion above stated. The 1901 act was not there held as running counter to section 8, article 9, of the State Constitution, as it dealt with rights of way and easements over State lands, and the court sustained the right of the State Legislature to authorize such easements without going through the procedure laid down under the Constitution and Admission Act covering the disposal of the fee title to State lands. So under the recognized rule that an interpretation of a State Constitution by the highest court of the State, if a federal constitutional or statutory question is not involved, is binding upon the federal court and should be followed.

It is urged that since the decision of the Fisher Case it has been overruled by the Supreme Court of the State. An examination of the subsequent decisions of the Supreme Court of Idaho will disclose that the Fisher Case was not mentioned, and the question there decided related to the transfer of the fee title and not the granting of rights of way or easement by the State Legislature under authority granted by the Admission Act and the State Constitution.

Similar provisions appear in the Admission Act and Constitution of the State of Wyoming as that of Idaho, and the question as to the power to grant rights of way over State land was upheld by the Supreme Court of Wyoming in the case of Ross et al., v. Trustees of University of Wyoming, 30 Wyo. 433, 222 P. 3, 5, where it is said: "From the foregoing it is clear that Congress and the people of the state intended that the lands in question should be used for the support of a university, and that neither the lands nor the proceeds of sales thereof should be diverted to another purpose. However, we cannot for a moment believe that it was intended that the restriction on the use of the lands should interfere with the establishing of public roads across them. * * *

"The grant by which the state acquired the land in question is by one of several made or confirmed to the state by the Act

of Admission. Each grant, like the one for the benefit of a university, is for a particular purpose. The lands so granted aggregate more than 4,000,000 acres, of which perhaps less than one-sixth have to this date passed into private ownership. 9th Biennial Rep., Com. of Public Lands, p. 20. It is a matter of common knowledge that they are so located in thousands of separate tracts throughout the state that there is hardly a community where it may not, if it has not already, become necessary to locate a public road across some part of them. Formerly these lands were a part of the public lands of the United States, and subject to the liberal provisions of the acts of Congress granting rights of way for many public purposes. Several of these acts are collected in 6 Fed.Stat.Ann. p. 498 et seq. (U.S.Com.St. §§ 4918–4957 [see 43 U.S.C.A. §§ 665, 933, 941 et seq., 10 U.S.C.A. § 1349]). In acts of that kind we see a congressional recognition of the public necessity of the improvements thus aided, and a purpose to enhance the value and hasten the settement of the public lands affected. Idaho-Iowa, etc., Co. v. Fisher, 27 Idaho, 695, 151 P. 998; Great Northern Ry. Co. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed 564. It should require no discussion to show the vital importance of public roads to a new and undeveloped country such as Wyoming was at the time of these grants, and, in fact, is at the present time. Few highways are so short that they do not at some point cross public lands. They are as necessary across public lands held by the state under these grants as they are across similar lands still held by the United States, and their establishment is as likely to enhance the value of the former as the latter. To say that, when Congress granted to the state so considerable a part of the public lands for the support of certain state institutions, it was intended that the state should not thereafter grant rights of way for public travel without violating the conditions then agreed upon, would be to adopt a construction that would seem not only contrary to the wise policy of Congress, but likely also to defeat in part the very objects of the grants. Those objects are not to be fully attained unless the lands in question become desirable, and to be that, they, with adjacent lands, must be accessible.

"From several acts of the Legislature it is evident that that body has never understood that its power to grant rights of way for public improvements on state land was at all limited by the acts of Congress or the state Constitution. The first state Legislature provided for the granting of rights of way for railroads and pipe lines (Laws 1890-91, c. 39), and, generally, for all public conveniences (Id., c. 79, § 48). These laws are entitled to consideration as a contemporaneous legislative construction of the terms of the grant to the state. That construction has been consistently adhered to, and the cited acts, with some amendments immaterial on this point, continue in force. Sections 5371, 745, Wyo. C.S.1920; Laws 1921, c. 115. A law passed in 1905 grants rights of way across state lands for ditches, tunnels, telephone and transmission lines constructed under the authority of the United States. Section 4954 C.S.1920. A more extended search of the statutes then we have thought it necessary to make might discover other laws to evidence the same construction and policy. In other states where, as in Wyoming, large bodies of lands are held under constitutional provisions which require them to be devoted to particular purposes, we find by brief research several acts which show the asserted power of the various state Legislatures to authorize the granting of rights of way for highways across such lands. Wash., Rem.Code 1915, § 6332; Colo.Laws 1919, c. 187, § 29; Utah, Laws 1915, c. 56; Ariz., Rev.Stat. 1913, § 4571; Mont.Laws 1909, c. 147, § 32. We do not find any decision where the validity of any of these acts has been questioned. * * *

"We are of opinion that neither Congress nor the people of the state intended that anything in the terms of the grant or its acceptance should restrict the power of the state to establish and maintain necessary public highways over the granted lands. We think that power is neither dependent upon, nor limited by, the provisions with respect to the sale and disposition of said lands. The impracticability of creating an easement for a public road by means of a public auction is too obvious to require comment. The minimum price of $10 per acre was fixed with full knowledge that some of the tracts were not then worth so much. Some have not yet attained that value, and some may not attain it for many years to come. The wise policy which forbade the sale of these lands until the minimum price so fixed could be obtained ought not to be invoked to prevent or hinder the establishment in the mean-

time of necessary public highways. If it were to be held that the granting of an easement for such a purpose is a disposal of the land within the meaning of section 1 of article 18, supra, we should reach the strange conclusion that it was intended, either that highways should not be established across state lands which are of value of less than $10 per acre, or that the state in such cases should insist on receiving for lands devoted to that purpose more than they are actually worth. We think, therefore, that the granting of the right of way across the lands in question was not a sale of the lands within the meaning of the grant nor a disposal thereof within the meaning of the cited section of the state Constitution."

The Supreme Court of the United States in the case of Ide et al. v. United States, 263 U.S. 497, 44 S.Ct. 182, 184, 68 L.Ed. 407, has considered the question and passed upon the granting of rights of way over State land by the State of Wyoming, which was the same as the right of way granted by section 56-504, I.C.A. It was there said: "Wyoming has a statute granting rights of way over all lands of the state for ditches 'constructed by and under the authority of the United States' and providing that all conveyances by the state shall contain 'a reservation for rights of way' of that class. Laws 1905, c. 85. The patents issued by the state for the tracts in the school section all contain a clause showing that the title was transferred subject to all rights of way granted under the laws of the state 'or reserved to the United States.' A contention is made that the statute and the reservation in the patents are confined to ditches constructed while the state owned the land. But it is not claimed that the Supreme Court of the state has so decided, and as we read the statute and reservation they refute the contention.

"We conclude that the plaintiff has a lawfully reserved right of way over the tracts of the defendants for such ditches as may be needed to effect the irrigation of the lands which the project is intended to reclaim, and that the defendants were apprised of this right by the patents which passed the tracts to them. In short, they received and hold the title subject to the exercise of that right."

It is made plain that when the defendant Fuller acquired the tract of land involved from the State that section 56-504, I.C.A., was in force which presented the situation as to put the defendant on inquiry respecting the rights which the United States possessed as to the right of way for the construction of a ditch and might exercise in the construction of an irrigation project. The failure to insert in the conveyance from the State to the defendant Fuller the reservation of such right of way as required by section 56-504, I.C.A., would not defeat the right of the United States under the statute, for the statute itself is notice to all grantees of State lands of the right of way for ditches constructed by authority of the United States.

Obviously, the question here is one of local concern on which this court should not declare section 56-504, I.C.A., unconstitutional under the State Constitution after the highest court of the State and the Supreme Court of the United States have held similar statutes to be valid. The demurrer is overruled.