CHARLES G. HENDERSON et al.

*v.*

CITY OF ATLANTIC CITY.

[Filed March 21st, 1903.]

1. By force of article 4, section 7, paragraph 6 of the state constitution, coupled with an act (*P. L. of 1894 p. 123*), lands under tide-water belonging to the State of New Jersey are irrevocably devoted to the support of free schools.

2. The provisions of an act (*P. L. of 1901 p. 374*) which confers power upon the board of riparian commissioners to make a grant of such lands to certain cities for a nominal consideration is unconstitutional; and a grant made to Atlantic City under color of this provision is void.

On bill to quiet title.

*Mr. George A. Bourgeois,* for the complainants.

*Mr. Henry Wootton,* for the defendant.

REED, V. C.

On October 10th, 1901, the board of riparian commissioners made a grant to the complainants of certain lands under water in front of riparian lands of which the complainants were then owners. On the same day the same board made a grant of a larger tract, including the tract granted to the complainants, to the city of Atlantic City. Preceding the time these grants were made, a contest existed respecting the right of these respective grantees to receive a grant of the property included in the grant to the complainants. The complainants claimed the right as owners of the *ripa,* and the defendants claimed their right under the provision of an act passed by the legislature and approved March 22d, 1901. *P. L. of 1901 p. 374.*

The grant to the complainant was made subject to the right, title and interest acquired by Atlantic City under the grant of the above date.

The grant to Atlantic City contains the proviso that if the act of 1901 should be at any time hereafter decided unconstitutional by a court of competent jurisdiction, and no appeal from such decision (if any appeal lies therefrom) is taken within one year from the date the same is made, then and in that event this instrument and conveyance, so far as the same binds the state, and all the conveyances herein on the part of the state, shall be void.

This suit is brought by the complainants to quiet the claims of Atlantic City under the grant to it just mentioned. The condition of affairs respecting possession of the property seems to put the complainants in a posture to bring this suit. Indeed it is admitted that the complainants are in peaceable possession.

The insistence of the complainants, as is perceived, is that Atlantic City cannot assert any right by virtue of the riparian grant to it, and therefore the grant to the complainants is exclusively operative.

The unconstitutionality of the act of 1901 is grounded upon the insistence that lands under tide-water, belonging to the State of New Jersey, are irrevocably devoted to the support of free public schools, and that the act of 1901 devotes a portion of such lands to other purposes. The premises upon which this

argument rests is based upon article 4, section 7, paragraph 6 of the constitution of New Jersey, coupled with an act passed in 1894. *P. L. of 1894 p. 123.* It is insisted that these constitutional and legislative laws have put it beyond the ability of the legislature to devote any of the lands under tide-water to any purpose other than the support of free schools in this state.

The language of the constitutional provision is this:

"The fund for the support of free schools, and all money, stock and other property which may hereafter be appropriated for that purpose or received into the treasury under the provision of any law heretofore passed to augment the said fund shall be securely invested and remain a perpetual fund; and the income thereof, except so much as it may be judged expedient to apply to an increase of the capital, shall be annually appropriated to the support of public schools for the equal benefit of all the people of the state; and it shall not be competent for the legislature to borrow, appropriate or use the said fund or any part thereof for any other purpose under any pretence whatever."

The act of 1894 is entitled "A supplement to an act to establish a system of public instruction. The language of this supplement of 1894 is

"That all the lands under water belonging to this state be and the same hereby are irrevocably appropriated for the support of free schools in this state, and that all moneys hereafter received from the sales and rentals of such lands under water belonging to this state shall be paid over to the trustees of the school fund and appropriated for the support of free public schools, and shall be held by them in trust for that purpose and shall be invested by the treasurer of the state, under their direction, in the same manner as the funds now held by them are invested, the same to constitute a part of the permanent school fund of the state, and the interest thereof to be applied to the support of public schools in the mode which now is, or may hereafter be, directed by law, and to no other purpose whatever."

Assuming that by force of this act the lands under water belonging to this state were appropriated to the support of free schools, the question is whether the act of 1901 infringes the constitutional provision.

The act of 1901 is entitled "A further supplement to 'An act to ascertain the rights of the state and its riparian owners in the lands lying under the waters of the bay of New York and elsewhere in the state.'" The first clause of this act provides that

"Whenever any public park has been, or shall hereafter be, laid out or provided for by ordinance of any city or other municipality, under the authority of any act of legislature of this state, along or fronting upon any of the tide-waters of this state, and whenever any streets or highways shall extend to said tide-waters, such municipality may apply through its legislative body to the commissioners appointed under the act to which this is a further supplement for a grant or conveyance to such city or municipality of the lands under water within the limits of said public park and of the land in front of said streets or highways; such grant to contain a provision that any land under water granted or conveyed for park uses shall be kept and maintained as an open public park or place for public resort and recreation, and that no building or other structures shall be erected on such park or on the lands under water so granted and conveyed inconsistent with its use as a public park or place for public resort and recreation; *provided, however,* that public walks and drives may be constructed along or upon any portion of the land so granted or conveyed."

The second section provides that

"The commissioners may make all such grants or conveyances applied for as aforesaid for the lands under water owned by the state, extending from the inland limits of such park to the exterior line established or to be hereafter established by the said commissioners, and for all land under water within the lines of the streets or highways, and in front of the ends of such streets or highways, and extending from the high-water lines to said exterior line, and may, in their discretion, charge therefor a nominal consideration only; and said grant or conveyance shall also contain a provision that if at any time after the grant or conveyance aforesaid has been made such public park or highway shall cease to be used as such park or place for public resort and recreation, or as such street or highway, the lands under water granted as aforesaid in front thereof shall at once revert to the state."

Section 3 provides that

"No conveyance shall hereafter be made by the said commissioners, except to the municipality aforesaid, of any land under water within the limits of such park, or within the lines or at the end of any such public street or highway."

In my judgment the only ground for attack upon this act is to be found in that part of section 2 which provides that the commissioners may, in their discretion, charge therefor a nominal consideration only. It is quite clear that the grant provided for under the act of 1901 is for a public purpose. It is

equally clear that apart from the act of 1894 the legislature could devote the property of the state to any public purpose. It seems also manifest that the appropriation of these lands as property under the constitutional provision had in view the conversion of this property into money which was to be securely invested. There was left in the state, therefore, the discretion when and how to transmute this property into money and to make all reasonable regulations for the use of the property until it was sold. It could probably grant a perpetual right to lay out its streets or highways through it, regarding the presence of such streets as likely to enhance the value of this property. So, too, perhaps, a privilege could be granted to a municipality to use it as a park until such times as the state thought it to the benefit of the school fund to transmute the land into money by sale or lease. So, too, I think, the state had a right to provide that under the conditions mentioned in the act of 1901 a sale should be made exclusively to a municipality having control of a public park.

The question, however, is whether it could make a perpetual gift of these lands to anyone, for this, it cannot be doubted, is intended by the language of the legislative act. The grant is for an easement which is practically perpetual and exclusive. There remains nothing of the least value to the state. The grant is intended to be gratuitous.

While it is true that a board may charge the same rate for a grant to a municipal corporation for a public park as to any other grantee, nevertheless the purpose for which the discretionary power was conferred upon the riparian board is manifest, and that purpose was executed in making this grant.

For the extensive grant made to Atlantic City the consideration is $1, and for the restricted grant made to the complainants the consideration is $990.

The grant to Atlantic City would have been null if the same consideration had been charged for it as for other grants to riparian owners; for the power to charge nothing taints the statutory clause and entirely destroys its force as an authority to make any grants.

In the language of Judge Earl in *Stuart* v. *Palmer, 74 N. Y. 183,* "the constitutional validity of a law is to be tested, not by what has been done under it, but by what, by its authority, may be done."

I am constrained to the conclusion that Atlantic City has no claim to the *locus in quo* under its grant.