THOMAS F. McCRAN, attorney-general, &c., informant-appellant,

*v.*

ERIE RAILROAD COMPANY et al., defendants-respondents.

[Submitted December 10th, 1923. Decided March 3d, 1924.]

The change of part of the line of the Newark and Hudson Railroad Company, where the same crosses the Passaic river at Newark, was not a change that could lawfully be made without complying with the requirements of section 16 of the Railroad act (*Comp. Stat. p.* 4228), requiring the consent of the riparian commission (now the board of commerce and navigation) and the payment to that body of compensation for land under water taken by the company.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, whose opinion is reported in *93 N. J. Eq. 286; 116 Atl. Rep. 103.*

*Mr. Harrison V. Lindabury,* for the appellant.

*Messrs. Collins & Corbin,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The facts are adequately stated in the opinion filed by the learned vice-chancellor. On this appeal all questions raised below as between the railroad company and the town of Kearny are eliminated, and the only point presented for our consideration and decision is whether the railroad company may appropriate without payment the land under water in the Passaic river, a navigable stream, as required for the building of its new bridge, or must pay to the board of commerce and navigation, for the use of the state, the value of

such land as settled by that board. The information sought an injunction against such appropriation without payment; the work proceeded after payment into court, subject to such award as the court should make in the premises, and the decree adjudged, among other things, that the deposit should be returned to the railroad company.

It is manifest that the power of this company to change its route by shortening a curve and building a new bridge in a different place, must arise out of statutory authority; and that such authority must be found either in the General Railroad act, or in the charter of the Newark and Hudson Railroad Company, enacted in 1870, and supplements, or both. The vice-chancellor correctly pointed out, and respondents properly concede, that if this power is referable solely to the general act of 1903 (*Comp. Stat. p. 4228 § 16*), the express terms of the proviso in that section require the company to pay for land under water taken and belonging to the state, except under circumstances not existing in this case. The question, then, is whether such power to appropriate without payment is contained in the charter, and the court below concluded that it was.

By the sixth section of the charter of the Newark and Hudson Railroad Company (*P. L. 1870 p. 1274*) it was made lawful for that company

"to lay out and construct a railroad not exceeding 100 feet in width, from a point in the city of Newark * * * at or near Gouverneur street to a point in the county of Hudson, where the said railroad may connect with the New Jersey Railroad and Transportation Company * * * and for that purpose the said (Newark and Hudson) company may erect and maintain bridges over the Passaic and Hackensack rivers, the said bridges to be provided with draws at least seventy feet in width."

Section 8 provides for the taking of lands, &c., "when the general route of said railroad shall have been determined on and a survey of said route shall have been deposited in the office of the secretary of state." Such a survey was filed May 28th, 1871, and, of course, shows the bridge over the Passaic in its original location.

The vice-chancellor held (as we read his opinion) *first,* that inasmuch as the original bridge and its connecting tracks were, or were to be, abandoned, the land under water occupied by that bridge would revert to the state and be a fair equivalent for the land now taken; and *secondly,* that the power given by section 6 to erect and maintain bridges was a continuing power and unaffected by later legislation in general terms.

We are unable to take this view of the matter. The charter conferred power to build and operate a railroad, and to exert the state's authority by way of eminent domain, in acquiring the land needed for that purpose. Following the almost invariable practice in such cases, such charter provided that the precise location of such railroad should be ascertained and made a matter of record by filing a survey in the office of the secretary of state. That being done, the location became fixed, and, as we have already said, could not be changed except by statutory authority. Such authority has been given in many cases, as, for example, by section 12 of the general act of 1903 (*Comp. Stat. p. 4224*); but we fail to find it in this charter, and it will not be held to exist unless expressly given, especially after the road is constructed (*33 Cyc. 130, 131; Ell. Railr. § 930; Morris & Essex Railroad Co.* v. *Central Railroad Co., 31 N. J. Law 205*), in which an express provision authorizing a change in location of an existing line or the location of new lines was relied on. *In Rowland* v. *Mercer County Traction Co., 90 N. J. Law 82; affirmed, 91 N. J. Law 332,* in which this court adopted the opinion of the supreme court, the question was whether the relocation of a terminal could be supported as a "new line" within the language of an enabling statute. Whether the shortening of this curve be a "relocation," or a "new line" or a "branch" (as it is called in the papers filed with the secretary of state under the General Railroad act), it is something not contemplated by any language in the charter of 1870.

It is argued that the power given by the charter to build bridges (in the plural) over the Passaic and Hackensack

rivers in general in its terms, and in effect enables the company to build an indefinite number of bridges over each river as desired from time to time. Applying the principle that legislative grants are construed strictly, we hardly think this proposition requires extended comment.

As to the suggestion in the opinion below, that the land under water required for the new bridge is merely an exchange for that relinquished by the abandonment of the old one, we can only say that while it may, perhaps, be equitable that the company should be reimbursed in some way for what it has chosen to abandon (as to which we express no opinion), the question before us is purely one of the applicability and meaning of statutes, and to be determined by the rules of statutory construction and interpretation.

So much of the decree as directs the fund in controversy to be paid to the Newark and Hudson Railroad Company, or to the director general of railroads, with interest, will be reversed, and the causes remanded, to the end that decree be entered providing for payment of the moneys to the board of commerce and navigation, or other proper state authority.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, VAN BUSKIRK, CLARK—10.