This is a bill to restrain the defendant from proceedings with the reclamation and improvement of certain riparian lands, of which it claims to be the owner, in accordance with the plans covering the contemplated improvements which have been approved by the board of commerce and navigation of this state. Notwithstanding such approval, however, *Page 33 
the board contends that the defendant has no title to certain portions of the lands upon which the proposed improvements are to be constructed, and insists that title thereto is in the state, and that the defendant must now acquire, from the state, either by grant or lease, and for an adequate consideration, the right to occupy, possess and use those disputed portions. The defendant, on the other hand, insists that it is not obliged to purchase or lease from the state, at this time, the lands in dispute, and claims that it has the absolute right to reclaim and occupy and use them pursuant to the approval of the plans, as the successor in title, by various mesne conveyances of the Gloucester Land Company, a corporation formed by the act of the legislature of New Jersey of February 16th, 1846. Pamph. L. 1846p. 20.
Prior to 1846 a group of men were interested in developing Gloucester, and they had acquired a large area of land in that vicinity, bordering on the Delaware river, and which appears to have been held in trust for them by Siter and Simmons, two of their number. As contemplated by the act of incorporation of the Gloucester Land Company, Siter and Simmons conveyed the various tracts of land which they so held, to the land company, including the upland adjacent to the tract involved in the present dispute. The land company, after its incorporation, in turn conveyed the same to the Washington Manufacturing Company, a corporation of the State of New Jersey, which held them until 1892, when it went into the hands of a receiver, who later conveyed the said lands and premises to Henry S. Grove, William S. Blakeley and George H. McFadden. In 1893 they conveyed the same to the Argo Mills Company, a New Jersey corporation. In 1920, the Argo Mills Company conveyed to Frank L. Hummel, trustee, and on November 20th, 1923, Hummel conveyed to the defendant by a deed, which contained, among other things, the recital:
"Containing in front or breadth on said Ellis street eight hundred and fifty feet, and extending of that width in length or depth westwardly along the northerly line of Monmouth street, and the southerly line of *Page 34 
Mercer street to low water mark in the river Delaware, and so far into the Delaware river as the rights of said party of the first part extend. * * * Together with the right, privilege and license now vested in said party of the first part to exclude tide waters of the Delaware river by filling in, reclaiming or otherwise improving the lands under water in said river in front of the above premises, and to appropriate the said land to its or their exclusive use."
The evidence shows that certain structures had existed on these lands since at least about 1870, and that the pier, as it exists at this time, is the same as was erected and existed at least prior to 1882, except certain portions thereof which were completed about 1886 or 1887, and that it was connected with a suction pipe running into the shore. It also shows that the dock, according to the map of Haynes Sherman, extends riverward of the low-water mark.
It is conceded by the attorney-general that any reclamation made by the owners of the upland adjoining the lands under water in question vested in them an undisturbable right as far as such reclamation took place within proper limits, and that the high-water mark, as shown on the map of Haynes Sherman, offered in evidence in these proceedings, must now be taken to be the limit of the state's rights, as it appears from the testimony that the fill was made to the present high-water line a considerable time prior to 1891.
The point of contention between the parties, therefore, narrows itself down to the right of the defendant to reclaim and improve at this time, without the grant or lease of the state, those portions of the lands in controversy which have not heretofore been actually reclaimed, filled in or built upon. And the determination of this point depends upon the construction to be given the grant to the Gloucester Land Company by its charter of 1846, in conjunction with the then existing local usage respecting the rights of the abutting owner, and the effect thereon of subsequent legislation relating thereto. Bell v.Gough, 23 N.J. Law 624.
Section 5 of the act of 1846 provides that the said company "shall have liberty to fill up, occupy, possess and enjoy all lands covered with water fronting and adjoining the premises *Page 35 
that may now be owned or may hereafter be purchased by them, and may construct thereon wharves, harbors, piers, slips or other structures necessary for commercial and shipping purposes."
The legislative grant is to be strictly construed and its general terms should not be extended to include specific rights not clearly included within its language. Morris Canal, c.,Co. v. C.R.R. Co., 16 N.J. Eq. 419; Townsend v. Brown,24 N.J. Law 80, 87; McCran v. Erie R.R. Co., 95 N.J. Eq. 653, 656;New Jersey Zinc Co. v. Morris Canal Co., 44 N.J. Eq. 398.
In my opinion, the right acquired by the Gloucester Land Company to reclaim the riparian lands adjacent to its upland, by its charter of 1846, and its like apparent common law or customary right, was a mere license or privilege or "liberty," which was subject to withdrawal or revocation by the state, if not previously exercised or acted upon by actual reclamation improvements, and that there has been a specific appropriation by the legislature of such portions of the lands involved in this suit as had not been actually reclaimed or otherwise improved or built upon at the time of the passage of the act of 1891 (P.L.1891 p. 216), which provides, in part, that "without the grant or permission of the riparian commissioners no person or corporation shall fill in, build upon or make any erection on, or reclaim any of the lands under the tide waters of this state."P.L. 1894 p. 123; Const. of N.J. art. 4 § 7 ¶ 6; Henderson
v. Atlantic City, 64 N.J. Eq. 583; Stevens v. PatersonRailway, 34 N.J. Law 532.
It follows, therefore, that the bill of the attorney-general, in so far as those hitherto unreclaimed portions of the lands in controversy are concerned, must be sustained, and I will advise a decree accordingly. *Page 36