## ROSS v. TRUSTEES OF UNIVERSITY

(No. 1172, January 8th, 1924; 222 Pac. 3.)

Public Lands—University Land Grants—Sale of State Lands—
Evidence—Legislature Empowered to Grant Rights of Way for
Public Roads Across State Lands—Words and Phrases.

1. Lands granted to the State for University purposes by Act
of Congress, February 18, 1881, (confirmed by the Act of
Admission, July 10, 1890), are held by the State charged
with the duty of devoting them to the purpose expressed,
and are "state lands" within Comp. Stats. 1920, Section
746, authorizing the State Board of Land Commissioners
to grant rights of way for roads across state lands.

2. Act Cong. Feb. 18, 1881, granting lands to the state for
university purposes, Act of Admission, Section 8, pro-
hibiting their "sale" for less than $10.00 an acre, and
requiring investment of the proceeds, etc., and Const.
Art. 18, Section 1, accepting the grant on the conditions
imposed, and providing for "disposal" at public auction
only after appraisal, do not prohibit the grant of rights
of way for roads across such lands; this not being a
"sale" or "disposal."

3. It is a matter of common knowledge that lands comprised
in grants by the Government to the State of Wyoming for
particular purposes are so located that in thousands of
separate tracts throughout the state, there is hardly a
community where it may not become necessary, or has not
become necessary, to locate a public road across some
part of them.

4. Under Const. Art. 18, Secs. 1-4, and Art. 7, Secs. 15, 17,
control of lands granted to the state for university pur-
poses is not vested in the trustees of the University so
as to preclude the Legislature from conferring on the
Board of Land Commissioners authority to grant rights
of way across them, as Section 17, providing for manage-
ment of the University, its "lands and other property"
by trustees, though including lands used in connection
with the University, does not include land of which it is
only the beneficiary.

Error to District Court, Albany County; Volney J. Tidball, Judge.

Action by the Trustees of the University of Wyoming, against William B. Ross and others as and constituting the Board of Land Commissioners of the State of Wyoming, and the Board of County Commissioners of Albany County as defendants, to quiet title and enjoin defendants from establishing a public road across University lands. There was a judgment for plaintiffs and defendants bring error.

*David J. Howell,* Atty. General and *Ray E. Lee* for plaintiffs in error.

The provisions of the Acts of Congress, Constitution of Wyoming and statutory provisions of the State affecting the title, control and disposal of university lands are: 1st. —The grant to the Territory, 21 Stat. L. 326; 2nd.—Act of Admission, 26 Stat. L. 223; 3rd.—State Constitution, Art. 7, Secs. 15 and 17, Art. 18, Sec. 1, 3 and 4; 4th.— Statutory provisions 696, 700, 746, Comp. Stats.; also S. L. 1921 p. 166; Secs. 470, 471 Comp. Stats. The granting Act vested the title of these lands in the Territory; the Act of Admission amending the grant, vested the title in the State with the proviso that they should not be sold for less than $10.00 per acre, which provision was accepted by the State Constitution, Art. 8, Sec. 1; the grant was made to the State; State v. Irvine, 206 U. S. 278, 51 L. ed. 1063; Cox v. Board, 161 Ala. 639, 49 So. 814; Black v. C. B. & Q. Ry. Co., 237 Ill. 500, 86 N. E. 1065; The State holds the lands in trust for the University, State v. Brian, 120 N. W. 916; Huckfeldt v. Board, 20 Wyo. 162; Alabama v. Schmidt, 232 U. S. 168, 58 L. ed. 555. The Legislature has authorized the State to grant rights of way for public roads across state lands. The petition below did not state a cause of action.

*N. E. Corthell* for Defendant in error.

The management of the lands involved is confided by the Constitution,, either to the University Board or the Land Board; Const. Art. 7, Sec. 15, 17, vests the title in the University, Atty. Gen. Repts. 1903 p. 26; Id. 1907-8 p. 63. In Cox v. Board 161 Ala. 639 it was held that the title passed out of the State to the Board of Trustees; the only difference between that case and the case at bar, is that in Alabama, title passed to the University by Statute; while here it was passed by the Constitution itself; Sec. 471 Comp. Stats. provides that the University Board shall have power to hold, manage, lease or dispose of the lands; it is true that Art. 7, Sec. 13 confers power upon the State Land Board to control, lease and dispose of public school lands, and Art. 18, Sec. 3 seems to extend the power to all lands granted to the State. The question cannot be finally set at rest without the decision of this Court. Treating the question as *res integra,* the Constitution as a whole must be considered in determinnig the scope and import of the several provisions germane to the question, and effect given to every Section if possible. Cooley Const. Lim. 71, 1 Kent's Com. 461, Sutherland Stat. Cons. 241, 8 Cyc. 730; State v. Clay, 3 Wyo. 393; State v. Snyder, (Wyo.) 212 Pac. 758. The effect of these various Sections seems to be that State land grants in general shall be administered by the State Board; that School lands shall be administered by the Board of School Land Commissioners; that University lands shall be administered by the Trustees of the University; a particular intent incompatible with a general intent will be treated as an exception. 8 Cyc. 743. A duty is imposed by the Constitution upon the University Board, State v. Board, (Ida.) 196 Pac. 201, 204. The Michigan Court has affirmed the same principle under the Constitution of that state. People v. Regents, 4 Mich. 98; Weinberg v. Regents, 97 Mich. 254, 56 N. W. 605; Bauer v. State Brd. of Agri., 164 Mich. 415, 129 N. W.

713; Sterling v. Regents, 110 Mich. 369; 68 N. W. 253; Brd. of Regents v. Auditor Gen., 167 Mich. 444, 132 N. W. 1037; St. Brd. of Agri. v. Fuller, 180 Mich. 349, 147 N. W. 529, 532. The Supreme Court of Minnesota under a Constitution almost identical, has affirmed the same principle, Gleason v. University, (Minn.) 116 N. W. 650. And also Nebraska. State v. Bartley, (Neb.) 58 N. W. 956, and the Indiana Supreme Court, Trustees of Univ. v. Indiana (U. S.) 14 How. 269. See also State v. Donald, (Wis.) 151 N. W. 331 and California, People v. Kewen, 69 Cal. 215, 10 Pac. 393; see also Sterling v. Regent 68 N. W. 253 and In re Senate Resolution (Colo.) 21 Pac. 472; People v. Regents, 24 Colo. 175, 49 Pac. 286. In view of the above authorities it would seem that the University Board is entitled to the decree restraining the attempted diversion of the land grant from university purposes to highway purposes assumed to be authorized by the Legislative Act invoked.

KIMBALL, Justice.

This action was commenced by the Board of Trustees of the University of Wyoming, as plaintiff, against the State Board of Land Commissioners and the Board of County Commissioners of Albany County, as defendants. It appears from the petition that the first named defendant has granted to the other a right of way for a public road about to be constructed across a section of state land, one of the 72 sections granted to the Territory of Wyoming by the act of congress, approved February 18, 1881 (21 Stat. 326), entitled "An act to grant lands to Dakota, Montana, Arizona, Idaho and Wyoming for university purposes," and confirmed as to Wyoming by section 8 of the act of congress approved July 10, 1890 (26 Stat. 223), known in this jurisdiction as the "Act of Admission." It is not claimed that the land over which the right of way has been granted is used by the university in connection with any of the activities of that institution.

However, it is alleged in the petition that the granting and taking of the right of way for the public road will be in violation of the plaintiff's right to manage and control said lands and in deprivation of its use and enjoyment of them for the purposes of said university. The prayer is that plaintiff's ''right, title and interest in and to said lands under the acts of congress, and for the use and support of said university, may be quieted and established; that the defendants may be declared to have no interest, right or title in or authority over the said lands; that the defendants and each of them may be perpetually enjoined from assuming or exercising any power of disposition over said lands, and from establishing, laying out, excavating, grading or constructing said public road over said lands, or in any manner altering or adapting said lands for the purposes of such road;'' and for costs.

A demurrer to the petition on the ground, among others, that it did not state facts sufficient to constitute a cause of action was overruled, and the defendants declining to plead further, judgment was rendered in substantial conformity to the prayer of the petition, and the defendants bring the case here by proceeding in error.

. The grant of the right of way was made pursuant to section 746 Wyo. C. S. 1920, which reads as follows:

''Upon application of the board of county commissioners of any county, the state board of land commissioners and the state board of school land commissioners shall have authority to grant either a temporary or permanent right of way for ditches owned by the county or for county roads over and across any of the state or state school lands, upon such terms as said boards may determine, and to issue to such county a certificate therefor; no charge shall be exacted for the filing of such application or for the issuance of such certificate or for granting and recording right of way.''

During the pendency of the action the two state boards mentioned in this section have been consolidated by the eighth amendment to the state constitution which became effective December 20, 1922.

We think there can be no doubt that the lands in question are state lands within the meaning of this statute. They were taken and are held by the state charged with the duty of devoting them to the purpose expressed in the grant.   State vs. Irvine, 14 Wyo. 325, 84 Pac. 90, affirmed 206 U. S. 278; 27 Sup. Ct. 613; 51 L. ed. 1063; Alabama vs. Schmidt, 232 U. S. 168, 34 Sup. Ct. 301; 58 L. ed. 555; Hjorth Royalty Co. vs. Trustees of University of Wyo., (Wyo.) 222 Pac. 9, decided this day.

The questions in the case concern the right of the legislature to give to the Board of Land Commissioners the power which it has assumed to exercise under this statute. We think it proper first to consider the contention that the granting of the right of way is prohibited by several provisions of the acts of congress granting the lands to the state and of the state constitution.   The act of February 18, 1881, supra, provided, among other things, that the lands in question should be "selected and withdrawn from sale and located   *   *   *   for the use and support of a university" in the Territory when it should become a State.   Section 8 of the Act of Admission (Act of July 10, 1890, supra) provides, among other things, that "none of said lands shall be sold for less than $10 per acre, and the proceeds shall constitute a permanent fund to be safely invested and held by said state, and the income thereof to be used exclusively for university purposes."   Section 1 of Article XVIII of the state constitution provides for the acceptance of this grant, among others, "with the conditions and limitations that may be imposed by the act or acts of congress, making such grants," and that: "Such lands shall be disposed of only at public auction to the highest bidder, after having been duly appraised by the land commissioners, at not less than three-fourths of the

appraised value thereof, and for not less than $10 per acre.'' These references are sufficient to show the purpose for which the lands were granted by the United States and accepted by the state, and the limitations placed upon their sale and disposition. It is unnecessary at this point to make special reference to other constitutional provisions which we think do not make that purpose any plainer nor enlarge the limitations now to be considered.

From the foregoing it is clear that Congress and the people of the state intended that the lands in question should be used for the support of a university, and that neither the lands nor the proceeds of sales thereof should be diverted to another purpose. However, we cannot for a moment believe that it was intended that the restriction on the use of the lands should interfere with the establishment of public roads across them.

The power of a state to provide highways for public use has been likened to the power of taxation and said to be well nigh as essential to the existence of government. Courts do not hold that the power has been surrendered except in those cases where there appears the deliberate purpose of the state to abandon it. Cincinnati vs. Louisville & N. R. Co., 223 U. S. 390, 405, 32 Sup. Ct. 267, 56 L. ed. 481, quoting the following forceful language of Mr. Chief Justice Taney in the Charles River Bridge Case, 11 Pet. 420, 547; (9 L. ed. 773):

''But the object and end of all government is to promote the happiness and prosperity of the community by which it is established; and it can never be assumed that the government intended to diminish its power of accomplishing the end for which it was created. And in a country like ours, free, active, and enterprising, continually advancing in numbers and wealth, new channels of communication are daily found necessary, both for travel and trade, and are essential to the comfort, convenience, and prosperity

of the people. A State ought never to be presumed to surrender this power, because, like the taxing power, the whole community have an interest in preserving it undiminished.''

The grant by which the state acquired the land in question is but one of several made or confirmed to the state by the Act of Admission. Each grant, like the one for the benefit of a university, is for a particular purpose. The lands so granted aggregate more than four million acres, of which perhaps less than one-sixth have to this date passed into private ownership. 9th Biennial Rep., Com. of Public Lands, p. 20. It is a matter of common knowledge that they are so located in thousands of separate tracts throughout the state that there is hardly a community where it may not, if it has not already, become necessary to locate a public road across some part of them. Formerly these lands were a part of the public lands of the United States, and subject to the liberal provisions of the acts of Congress granting rights of way for many public purposes. Several of these acts are collected in 6 Fed. Stat. Ann. p. 498 *et seq.* In acts of that kind we see a congressional recognition of the public necessity of the improvements thus aided, and a purpose to enhance the value and hasten the settlement of the public lands affected. Idaho-Iowa etc. Co. vs. Fisher, 27 Ida. 695, 151 Pac. 988; Great Northern Ry. Co. vs. Steinke, 261 U. S. 119, 43 Sup. Ct. Rep. 316. It should require no discussion to show the vital importance of public roads to a new and undeveloped country such as Wyoming was at the time of these grants, and, in fact, is at the present time. Few highways are so short that they do not at some point cross public lands. They are as necessary across public lands held by the state under these grants as they are across similar lands still held by the United States, and their establishment is as likely to enhance the value of the former as the latter. To say that when Congress granted

to the state so considerable a part of the public lands for the support of certain state institutions it was intended that the state should not thereafter grant rights of way for public travel without violating the conditions then agreed upon would be to adopt a construction that would seem not only contrary to the wise policy of Congress but likely also to defeat in part the very objects of the grants. Those objects are not to be fully attained unless the lands in question become desirable, and to be that, they, with adjacent lands, must be accessible.

From several acts of the legislature it is evident that that body has never understood that its power to grant rights of way for public improvements on state lands was at all limited by the acts of congress or the state constitution. The first state legislature provided for the granting of rights of way for railroads and pipe lines .(Laws 1890-1891, c. 39), and, generally, for all public conveniences. (Id., c. 79, Sec. 48). These laws are entitled to consideration as a contemporaneous legislative construction of the terms of the grant to the state. That construction has been consistently adhered to, and the cited acts, with some amendments immaterial on this point, continue in force. Sec. 5371, 745, Wyo. C. S. 1920; Laws 1921, c. 79, Sec. 48. A law passed in 1905 grants rights of way across state lands for ditches, tunnels, telephone and transmission lines constructed under the authority of the United States. Sec. 4954, C. S. 1920. A more extended search of the statutes than we have thought it necessary to make might discover other laws to evidence the same construction and policy. In other states where, as in Wyoming, large bodies of lands are held under constitutional provisions which require them to be devoted to particular purposes, we find by brief research several acts which show the asserted power of the various state legislatures to authorize the granting of rights of way for highways across such lands. Wash., Rem. 1915 Code, Sec. 6332; Colo., Laws 1919, c. 187, Sec. 29; Utah, Laws 1915,

c. 56; Ariz., Rev. Stat. 1913, Sec. 4571; Mont., Laws 1909, c. 147, Sec. 32. We do not find any decision where the validity of any of these acts has been questioned.

The taking of such lands in condemnation proceedings by the exercise of the right of eminent domain has been the subject of some discussion usually, if not always, with the result that the right so to acquire them under legislative authority has been upheld, at least where the fee is not thereby taken. Roberts vs. City of Seattle, 63 Wash. 573, 116 Pac. 25; City of Tacoma vs. State, 121 Wash. 448, 209 Pac. 700; In re Condemnation of Lands in St. Louis Co., 124 Minn. 271, 144 N. W. 960; Hollister vs. State, 9 Ida. 651, 77 Pac. 339; Idaho-Iowa Lateral & Reservoir Co. vs. Fisher, 27 Ida. 695, 151 Pac. 998 overruling Toney vs. Bridgewood, 22 Ida. 566, 127 Pac. 178; State vs. District Court, 42 Mont. 105, 112 Pac. 706; Imperial Irr. Co. vs. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914 B. 322. Eminent domain is shortly defined as the power to take private property for public uses. West River Bridge Co. vs. Dix, 6 How. 507, 536; 12 L. ed. 535. So understood, we think that power is not involved in this case, but if, in the exercise of it, the state may permit corporations and individuals to acquire the right to use property of this character for quasi-public purposes, it is hard to see why the state itself may not consent to its use for a purely public purpose, especially where that would seem to further rather than defeat the objects of the grant. See: Middleton vs. Presidio Co. (Tex. Civ. App.) 138 S. W. 812; Texas Central R. Co. vs. Bowman, 97 Tex. 417, 79 S. W. 295; Lawver vs. Great Northern Ry. Co., 112 Minn. 46, 127 N. W. 431.

In Henderson vs. Atlantic City, 64 N. J. Eq. 583, 54 Atl. 533, where it was held that lands devoted by the constitution to the support of schools could not be granted for a nominal consideration to a city for park purposes, it was said that the state could probably grant a perpetual right

to lay out its streets or highways through the land, regarding the presence of such streets as likely to enhance the value of the property. A similar thought might justly be read into the cases of the State vs. Cunningham, 88 Wis. 81, 57 N. W. 1119; 59 N. W. 503, and State vs. Donald, 160 Wis. 21, 151 N. W. 331, concerning the right of the state to devote school lands to parks or forests.

We are of opinion that neither Congress nor the people of the state intended that anything in the terms of the grant or its acceptance should restrict the power of the state to establish and maintain necessary public highways over the granted lands. We think that power is neither dependent upon, nor limited by, the provisions with respect to the sale and disposition of said lands. The impracticability of creating an easement for a public road by means of a public auction is too obvious to require comment. The minimum price of $10 per acre was fixed with full knowledge that some of the tracts were not then worth so much. Some have not yet attained that value, and some may not attain it for many years to come. The wise policy which forbade the sale of these lands until the minimum price so fixed could be obtained ought not to be invoked to prevent or hinder the establishment in the meantime of necessary public highways. If it were to be held that the granting of an easement for such a purpose is a disposal of the land within the meaning of section 1 of Article XVIII, supra, we should reach the strange conclusion that it was intended either that highways should not be established across state lands which are of value of less than $10 per acre, or that the state in such cases should insist on receiving for lands devoted to that purpose more than they are actually worth. We think, therefore, that the granting of the right of way across the lands in question was not a sale of the lands within the meaning of the grant nor a disposal thereof within the meaning of the cited section of the state constitution.

It is claimed, however, that under the constitution the plaintiff has the right to control, manage and dispose of lands of this character, and that the quoted statute in so far as it purports to confer on the Board of Land Commissioners the power to grant rights of way across such lands is an interference with plaintiff's constitutional right to exercise that power, and, therefore, void.

To discover in the constitution the intention of the people with respect to the control and disposition of the public lands of the state, we naturally turn first to Article XVIII, entitled "Public Lands and Donations," which was one of the last articles to be considered by the constitutional convention, and appears among the last in that document as arranged for submission to the people. Section 1 of that article has already been noticed.

The two following sections of the same article provide:

"Sec. 2. The proceeds from the sale and rental of all lands and other property donated, granted or received, or that may hereafter be donated, granted or received, from the United States or any other source, shall be inviolably appropriated and applied to the specific purposes specified in the original grant or gifts.

Sec. 3. The governor, superintendent of public instruction and secretary of state, shall constitute a board of land commissioners, who under such regulations as may be provided by law, shall have the direction, control, disposition and care of all lands that have been heretofore or may hereafter be granted to the state."

Section 4 provides that "the legislature shall enact the necessary laws for the sale, disposal, leasing and care of all lands that have been or may hereafter be granted to the state;" for the location and selection of the lands granted by Congress to the state, and for the keeping, transfer and disbursement of land grant funds.

If article XVIII stood alone, it would seem clear that it was intended that the sale, disposition, lease and care of

all state lands should be governed by its provisions.  State lands held for university purposes were undoubtedly had in mind when the article was framed by the convention and acted upon by the people.  This is quite clear when it is conceded, as it must be, that sections 1, 2 and 4 do apply to state university lands as well as to other state public lands.  It is not contended that the sections last enumerated do not apply to university lands, but only that section 3 does not.  The basis for the contention is found in two sections of Article VII, entitled "Education," under the sub-title "The University," as follows:

"Sec. 15.  The establishment of the University of Wyoming is hereby confirmed, and said institution, with its several departments, is hereby declared to be the University of the State of Wyoming.  All lands which have been heretofore granted or which may be granted hereafter by congress unto the university as such, or in aid of the instruction to be given in any of its departments, with all other grants, donations, or devises for said university, or for any of its departments, shall vest in said university, and be exclusively used for the purposes for which they were granted, donated or devised.  The said lands may be leased on terms approved by the land commissioners, but may not be sold on terms not approved by congress."

"Sec. 17.  The legislature shall provide by law for the management of the university, its lands and other property by a board of trustees, consisting of not less than seven members, to be appointed by governor by and with the advice and consent of the senate, and the president of the university, and the superintendent of public instruction, as members ex officio, as such having the right to speak, but not to vote.  The duties and powers of the trustees shall be prescribed by law."

Counsel for plaintiff says that by section 3 of article XVIII state lands in general shall be administered by the

Board of Land Commissioners, and concedes that in the absence of a provision showing a different intention lands held for university purposes would be included in the state lands mentioned in that section. But he asserts that section 17 of article VII is a special provision showing a different intention with reference to the administration of lands held for university purposes. Invoking, then, the principle that where general and special provisions of a constitution conflict the special provision shall be given effect to the extent of its scope (12 C. J. 709), he claims that the power to administer the lands last mentioned is conferred by the constitution on the Board of Trustees. Before the rule of construction relied upon can be applied we must decide whether there is a conflict between the two sections. We should harmonize them if possible. If by a reasonable construction each section can be given its intended meaning without conflict with the other, that is the construction we should adopt. With this in mind, we come readily to the conclusion that the provision of section 17 of article VII for the ''management of the university, its lands and other property by a board of trustees'' was not intended to affect the management and control of state lands like those in question. We think it is not a strained construction to say that the lands and other property of the university, as there mentioned, while including no doubt all real and personal property occupied or used by or in connection with that institution and, perhaps, other property not necessary now to be inquired about, does not include lands held by the state for university purposes under this grant. As to these state lands the university's interest is that of a beneficiary, and its right is not to have the lands but only the income therefrom.

We think there would be no dissent from the view just expressed with reference to the meaning of section 17 if it were not for the provisions of section 15 of the same article from which it is argued that the lands in question were vested in the university and thus became ''its lands''

within the meaning of those words as used in section 17. This contention finds support in the opinions of two Attorneys General of the state. Op. Atty. Gen. Wyo. for 1902, p. 27; Id. for 1907-1908, p. 63. Since the giving of the first of these opinions the right of the Board of Land Commissioners to manage and control lands of this kind has never been free from doubt, and the principal object of this action is to have the doubt settled. The point so raised has received at our hands the careful consideration which we think it deserved with the result, however, that we are unable to give our approval to the construction contended for.

We see nothing in section 15 to evince an intention to take these lands out of the category of state lands where they were placed not only by the very terms of the grant and its acceptance, but also by other provisions of the constitution. Indeed, it may be doubted whether this section was intended to have any reference to such lands. At the date of the original granting act (act of congress of February 18, 1881, supra) no university had been established in the territory. The grant was to the territory for the support of a university, not for any particular university. The University of Wyoming was not established until 1886. Laws 1886, c. 37. In 1889, when the constitution was framed and adopted, these lands had not been granted to the University of Wyoming as such, nor in aid of the instruction to be given in that institution. The only act of congress that had mentioned the university of Wyoming in connection with this grant was the act of August 9, 1888 (25 Stat. 393) permitting the lease of the lands by a board composed of officers of the territory, and providing, by section 4, that the moneys derived from such leasing should become a part of the university fund of the territory and be used for the support of the University of Wyoming. A territorial legislative act to carry out the provisions of the last mentioned act of congress appears as chapter 84, laws of Wyoming, 1890. The

Act of Admission of 1890 was no more definite with respect to the institution to be benefited by this grant than the original granting act, and declared the lands to be vested in the state, the income thereof to be used "for university purposes." By the granting acts, therefore, the lands became the property of the state charged with the duty of devoting them "to the support of a university," or "to university purposes," and it would seem that the right to designate the particular university to be benefited was left by congress to the state. State vs. Irvine, supra, at page 365 of 14 Wyo. See, also, King County vs. Seattle School District, 44 Sup. Ct. 127, decided December 3, 1923, and cases cited.

By the grant the lands became a fund which the state undertook to hold in perpetuity devoting the income to university purposes. State vs. Snyder, 29 Wyo. 163, 183, 212 Pac. 758. The use of that income for its support was all the benefit that any university could expect to receive from the fund, and if the section now under consideration sufficiently designates the University of Wyoming as the university so to be benefited, we believe it accomplishes every intended purpose with reference to this grant. We do not think it was intended that the lands constituting the fund should become lands of the university within the meaning of section 17.

In our opinion the plaintiff's petition states no sufficient ground for setting aside the grant of the right of way in question or for granting any other relief asked in the prayer, and the demurrer should not have been overruled. For the error in that ruling the judgment will be reversed, and the case remanded with instructions that the demurrer be sustained, and for further proceedings not inconsistent with this opinion.

*Reversed and Remanded with Instructions.*

Potter, Ch. J., and Blume, J., concur.

NOTE—See 23 C. J. p. 90; 32 Cyc. 868 (1925 Anno.)