307 P.2d 911

Roger ERNST, State Land Commissioner of Arizona and John Harris Crosby, Petitioners,

v.

The SUPERIOR COURT OF APACHE COUNTY, State of Arizona and The Honorable J. Smith Gibbons, Judge of the Superior Court of Apache County, Respondents.

No. 6322.

Supreme Court of Arizona.

March 5, 1957.

Robert Morrison, Atty. Gen., and Herbert B. Finn, Sp. Asst. to Atty. Gen., for petitioner State Land Commissioner.

Yale McFate, Phoenix, for petitioner John Harris Crosby.

Earl Platt, St. Johns, for respondents.

WINDES, Justice.

John Harris Crosby filed with the state land commissioner, Roger Ernst, two applications for permits to appropriate water, one for domestic use to serve fifty homes and homesites in Greer, Arizona, and one for domestic, livestock and garden use. Mrs. E. G. Dentzer and Mrs. Floyd Rogers filed applications for like permits to appropriate for domestic and livestock use. The Lyman Water Co., St. Johns Irrigation and Ditch Company, Round Valley Water Users Association and certain individuals filed protests to the granting of the permits upon the ground that protestants had prior, vested, decreed rights to all the water sought to be appropriated in the applications for the permits. Hearing was had by the commissioner and the protests denied, and the permits granted as to three of the applications and conditionally granted as to the fourth. The protestants filed a consolidated appeal to the superior court of

Apache County from the decisions of the commissioner. The state land commissioner and John Harris Crosby, hereinafter designated petitioners, applied to this court for a writ of prohibition seeking to prohibit the superior court of Apache County and the judge thereof, hereinafter designated respondents, from proceeding to hear the matter. We issued alternative writ.

Section 75–106, A.C.A.1939 (now A.R.S. 1956, § 45–143), is the statutory provision which authorizes the state land commissioner to issue permits for the appropriation of water. Section 75–113, A.C.A. 1939, provides that when the commissioner renders a decision upon such an application the applicant or any person whose rights are affected may appeal to the superior court. We have held that when application is made for the appropriation of water and objection to granting the same is presented to the commissioner upon the ground that all the water sought to be appropriated under the permit has already been appropriated, the objector has no right of appeal to the superior court under section 75–113, supra, and the superior court should be prohibited from hearing the same for the reason that, under the procedure prescribed for granting a permit, the decision of the commissioner can in no way affect the vested rights of prior appropriators. Beach v. Superior Court, 64 Ariz. 375, 173 P.2d 79.

Subsequent to the decision in the Beach case, the legislature enacted section 11–110, 1952 Supp., A.C.A.1939, Laws 1952, chapter 117, section 5, which insofar as pertinent to the question herein presented provides as follows:

"*Uniform appeal provisions relating to any decision of the commissioner.*— (a) In addition to those appeals from final decisions of the commissioner to the superior court as may be otherwise now authorized by law, an appeal from any final decision of the commissioner * * * made pursuant to the powers and duties conferred upon him by law, or which may be hereafter conferred upon him, whether relating to the administration of state lands or other departments or agencies of state under his jurisdiction, may be taken by any person adversely affected by such decision to the superior court of the county in which the major portion of the land, property or rights involved in the decision is situate."

Respondents claim their appeal to the superior court is brought under this latter enactment and that the Beach case is not controlling. Section 75–113, supra, gives the right of appeal to "any person whose rights are affected by the decision of the commissioner" and section 11–110, supra, gives the right of appeal to "any person adversely affected by such decision". We are unable to perceive any difference in the

meaning as expressed in the two statutes. If a person's rights are not affected, it appears to us that he is not adversely affected. Respondents do not contend that the commissioner's decision in granting the permits can disturb the vested water rights of prior appropriators. This being so, such appropriators are in no way injured or bound by the decision and there are ample remedies for an invasion or attempted invasion of their rights. Their remedy is not, however, by way of an appeal from the decision of the commissioner in granting the permits. Our view is that the Beach case is determinative of the question here presented and that the superior court has no jurisdiction to hear the appeal.

The question is debated as to which of the two foregoing statutes is available to one who has the right of appeal from a decision of the commissioner granting a permit to appropriate waters. Since the appeal in question herein was lodged with the superior court, the legislature simultaneously re-enacted both section 75-113 and section 11-110, supra (A.R.S.1956, section 45-154 and section 37-134). Since we are ruling that the protestants had no right of appeal under either of the two sections, we express no opinion as to which one thereof is available to one who would have the right of appeal from a decision of the commissioner.

Ordered that the alternative writ of prohibition be and become peremptory.

STRUCKMEYER and LA PRADE, JJ., concurring.

UDALL, Chief Justice (dissenting).

I am of the opinion that the majority err in peremptorily prohibiting the respondent court from proceeding to hear the consolidated appeal filed by protestants in this water matter. Admittedly the Beach case, 64 Ariz. 375, 173 P.2d 79, is authority for the action taken; however, it is my view that (1) the Beach decision is bad law and should be overruled rather than followed as a precedent; (2) the law has been changed since that decision by the enactment of section 37-134, A.R.S., which enlarges the right of appeal in such cases.

I submit it is most unrealistic and naive for the majority to say that protestants—who are among the prior appropriators of *all* available waters—are not *"persons adversely affected by the decision"* of the commissioner since the permits purport to grant their holders at least a color of right to something which does not exist. To relegate them, as does this decision, to separate court actions to restrain individual permittees from using waters already appropriated certainly casts an undue burden upon holders of vested rights as it will result in a multiplicity of suits with its attendant, increased expense. I maintain the legislature intended the above statute would enable

protestants to easily and quickly "nip in the bud" these claimed embryo rights by a direct appeal to the court, which could cancel permits improvidently granted by the commissioner.

If the state land commissioner had followed the law in the instant case there would have been no occasion for an appeal to the superior court, application for prohibition in this court, nor any later separate actions by protestants. I say this because section 45–143, A.R.S., provides in part:

"Criteria for approval or rejection of applications; restrictions on approval; * * *

"A. The department shall approve applications made in proper form for the appropriation of water for a beneficial use, but when the application or the proposed use *conflicts with vested rights,* * * * the application shall be rejected." (Emphasis supplied.)

Had the commissioner examined the records of his own office he would have known that immediately following the adoption of the 1919 State Water Code, Chap. 164, Laws 1919, *the very first* determination of relative rights thereunder was that made on the "upper Little Colorado River and its tributaries" which was confirmed by a judgment of the superior court of Apache County, dated April 3, 1923. It is common knowledge (as the writer is well aware from 16 years' experience in administering these decrees) that this decree, coupled with other water decrees of that court, granted—in the order of their priority—rights for more water than has ever been available in said stream. In other words, when the permits in question here were granted there were no unappropriated waters on the Little Colorado River and its tributaries in Apache County, i. e., all rights had theretofore become vested, making this a fully "decreed" stream.

It is apparent from the record that the commissioner, in granting these permits, was largely relying upon an erroneous concept of the law governing priorities for domestic use. Where simultaneous applications are filed, it is true that domestic use is given preference (see section 45–147, A.R.S.), but that does not mean a would-be appropriator of domestic water can come in a half century later, after rights for other purposes have become vested, *and without compensation,* take water away from the vested owner merely because he desires to use it for domestic purposes. This is an unheard of and vicious doctrine that I am sure no court would ever uphold.

It is my considered opinion that the commissioner in issuing the permits in question was (a) violating the law, supra, which plainly states applications shall be rejected when the proposed use conflicts with vested rights, (b) fomenting and encouraging needless litigation, and (c) holding out a false hope to these latest permittees, for he knew, or should have known, that in the

final analysis they cannot hope to benefit by such *improvidently* issued permits. However, in the meantime these applicants may be misled into making expenditures for projects that will ultimately prove to be worthless.

It is for these reasons that I register this protest and dissent.

PHELPS, J., joins in this dissent.