407 P.2d 747

**The STATE of Arizona ex rel. ARIZONA HIGHWAY DEPARTMENT, Petitioner,**

**v.**

**Obed M. LASSEN, Commissioner, State Land Department, Respondent.**

No. 8620.

Supreme Court of Arizona.

En Banc.

Nov. 12, 1965.

Rehearing Denied Dec. 14, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Gary K. Nelson, Asst. Atty. Gen., for petitioner.

Dale R. Shumway, Sp. Asst. Atty. Gen., for respondent.

Rex E. Lee, Jennings, Strouss, Salmon & Trask, Phoenix, for Salt River Project Agri. Improvement Dist.

Rawlins, Ellis, Burrus & Kiewit, Phoenix, for Electrical Dists. Nos. 3 & 4, Pinal County.

A. Van Wagenen, Jr., Phoenix, for Electrical Dists. Nos. 2 & 5, Pinal County.

E. Leigh Larson, County Atty., Santa Cruz County, Westover, Copple, Keddie & Choules, Yuma, for Welton Mohawk Irrigation & Drainage Dist.

Richard J. Riley, County Atty. for Cochise County, amici curiae.

McFARLAND, Justice.

For over fifty years the state and county highway departments of Arizona have obtained rights of way and material sites without compensation over and on lands granted to the State of Arizona by the federal government pursuant to the Enabling Act of Arizona, June 20, 1910, c. 310, 36 U.S. Stat. 557, 568–579.

On December 14, 1964, the State Land Commissioner, hereinafter designated as Land Commissioner or respondent, after giving notice of a proposal to change the rules and regulations governing the rights of way and material sites over these lands, and holding a hearing at which petitioner appeared and filed an objection thereto, adopted the following rule designated as Rule No. 12 of the State Land Department, to-wit:

"State and County highway Rights-of-Way and Material Sites may be granted by the Department for an indefinite period for so long as used for the purpose granted after full payment of the appraised value of the Right-of-Way or Material Site has been made to the

State Land Department. The appraised value of the Right-of-Way or Material Site shall be determined in accordance with the principles established in ARS 12–1122."

Objections were overruled. On the same day, the State Highway Department, hereinafter designated as the Department or petitioner, filed this writ of prohibition to prevent respondent from enforcing this rule. An alternative writ of prohibition was granted by this court.

█ The question presented in this case is whether the Land Commissioner has the authority to adopt the rule as set forth which, in effect, provides for the payment for rights of way and material sites over these trust lands by the petitioner.

The lands were granted to the State of Arizona by the federal government pursuant to the Enabling Act of Arizona, June 20, 1910. Under Sec. 24 of this act, the State was granted "in trust," certain sections of every township for the support of common schools, with the opportunity to make indemnity selections where any of the sections were lost for one or more reasons. Congress further provided, in Sec. 25 of the Enabling Act, twelve specific grants for the following purposes: university; legislative, executive and judicial, public buildings; penitentiaries; insane asylum; school and asylum for deaf, dumb and blind; miners' hospital; normal schools; state

charitable, penal and reformatory institutions; agricultural and mechanical colleges; school of mines; military institutions; and county bonds. By Sec. 1, Art. 10, of the Constitution of Arizona, A.R.S., the people of Arizona accepted the terms of the Enabling Act.

"§ 1. Acceptance and holding of lands by state in trust

"Section 1. All lands expressly transferred and confirmed to the State by the provisions of the Enabling Act approved June 20, 1910, including all lands granted to the State and all lands heretofore granted to the Territory of Arizona, and all lands otherwise acquired by the State, shall be by the State accepted and held in trust to be disposed of in whole or in part, only in manner as in the said Enabling Act and in this Constitution provided, and for the several objects specified in the respective granting and confirmatory provisions. The natural products and money proceeds of any of said lands shall be subject to the same trusts as the lands producing the same."

Respondent claims it has this authority under Section 28 of the Enabling Act, which sets forth the rules for the administration and disposition of the "trust lands" confirmed to the State of Arizona under Sec. 24 and Sec. 25. Section 28 provides, in part:

"Sec. 28. That it is hereby declared that all lands hereby granted, including those which, having been heretofore granted to said Territory, are hereby expressly transferred and confirmed to the said State, shall be by the said State held in trust, to be disposed of in whole or in part only in manner as herein provided and for the several objects specified in the respective granting and confirmatory provisions, and that the natural products and money proceeds of any of said lands shall be subject to the same trusts as the lands producing the same.

"Disposition of any of said lands, or of any money or thing of value directly or indirectly derived therefrom, for any object other than for such particular lands, or the lands from which such money or thing of value shall have been derived, were granted or confirmed, or in any manner contrary to the provisions of this Act, shall be deemed a breach of trust.

\* \* \* \* \* \*

" \* \* \* Said lands shall not be sold or leased, in whole or in part, except to the highest and best bidder at a public auction \* \* \*.

\* \* \* \* \* \*

" \* \* \* nor shall any sale or contract for the sale of any timber or other natural product of such lands be made, save at the place, in the manner, and

after the notice by publication provided for sales and leases of the lands themselves. * * *

. * * · * ' * ` * *

"A separate fund shall be established for each of the several objects ` for which the said grants are hereby made or confirmed, and whenever any moneys shall be in any manner derived from any of said land the same shall be deposited by the state treasurer in the fund corresponding to the grant under which the particular land producing such moneys was by this Act conveyed or confirmed. * * *

· * · * * * · * *

" * * * It shall be the duty of the Attorney General of the United States to prosecute, in the name of the United States and in its courts, such proceedings at law or in equity as may from time to time be necessary and appropriate to enforce the provisions hereof relative to the application and disposition of the said lands and the products thereof and the funds derived therefrom."

It is the contention of the respondent that, under the terms of these rules, it is a breach of trust to allow the petitioner to use the "trust lands" without compensating the trust fund for the use thereof. . , .

This question has been before this court on two prior occasions—the case of Grossetta v. Choate, 51 Ariz. 248, 75 P.2d 1031,

and the case of State ex rel. Conway v. State Land Department, 62 Ariz. 248, 156 P.2d 901. In Murphy v. State, 65 Ariz. 338, 181 P.2d 336, the late Justice LaPrade set forth an able and scholarly history of the Enabling Act. We see no reason for trying to add to the history of this act. In the case of State ex rel. Conway v. State Land Department, supra, we said:

"The holding of this court in the case of Grossetta v. Choate, 51 Ariz. 248, 75 P.2d 1031, substantially determines all the issues herein involved. In that case, we reviewed an order of the trial court holding that the establishment of a county highway over school land was void because the land was held in trust under the Enabling Act, and that the granting of a right-of-way thereover to a county was a violation of the Act. The judgment of the lower court was reversed, the holding being that the land department could grant a right-of-way for public highways over school land to the several counties since the Enabling Act does not limit the power of the legislature to authorize grants of right-of-way easements over public lands for public highways.

·"This decision was predicated on an ·interpretation of section 11–601, A.C.A. 1939. This section of the code, together with the provisions contained in sections 11–1001, 11–1002 and 11–1003, were all enacted at the same time. See

Laws of 1915 (2nd S.S.). Sections 11–1001, 11–1002 and 11–1003 were in effect at the time of the opinion and judgment in the case of Grossetta v. Choate, supra. The holding in the Grossetta [Grossetta v. Choate, supra] case was predicated not only on the statutory provisions of section 11–601, but also considered the restrictions of the grant in the Enabling Act.

"It is the contention of the land commissioner that this court in the Grossetta case did not pass on the question of whether such rights-of-way may be granted without compensation to the permanent fund to which he contends the lands are attached or belong.

"In the Grossetta case we cited the case of Ross v. Trustees of University of Wyoming, 30 Wyo. 433, 222 P. 3, and from a very lengthy opinion rendered on petition for rehearing in that case (31 Wyo. 464, 228 P. 642, 647), we quote with approval a portion of the opinion as applicable to the question under consideration:

"'The general provisions of the congressional granting acts and our state Constitution, limiting or conditioning the sale and disposal of the lands in question, should be reasonably construed, in view of the object of the grant, and the purpose of the restrictions. They contemplate, principally, so far as the question here is concerned, the creation and maintaining of a permanent fund, which, through proper investment, shall furnish an income to be used exclusively for University purposes, and incidentally, a fair sale at an adequate price. Unless such object or purpose is found to have become substantially impaired through granting a right of way for a county or public road, neither the act of the state making the grant nor the statute authorizing it should be held a violation of the trust upon which the land is held, or of the constitutional restrictions upon its disposal. For the natural tendency of the grant, reasonably made, across such lands, under the conditions described in the original opinion, is to enhance rather than to lessen their salable or rental value.'

"It is true that in the Grossetta case, the court did not in terms pass on the question of whether under section 11–1001, supra, easements for highways could be granted over these lands without compensation. It is evident, however, that this court in the Grossetta case had in mind the undoubted right of the state to provide for public highways, and if such highway was for a wholly public purpose, the right of the state to use such school or institutional lands for highway rights-of-way

without compensation is inferred." 62 Ariz. at 253, 156 P.2d at 903.

The Land Commissioner, in his brief, contends that this court should follow the decision of the Supreme Court of New Mexico in the case of State ex rel. State Highway Commission v. Walker, 61 N.M. 374, 301 P.2d 317, rather than our own decisions, for the reason that the Enabling Acts for each state were identical. We are of the opinion that the holdings in the case of State ex rel. Conway v. State Land Department, supra, and Grossetta v. Choate, supra, are sound, and see no reason for departing from these decisions.

■ The respective rights of way for these highways take less than a fee estate, and there is no disposition of the trust areas, and the trust and its beneficiaries are not deprived of anything of value. It is well known that good highways throughout a state increase the value of the lands. These lands are located throughout the state. The Land Commissioner, in his memorandum, sets forth what he stated to be a fair value for these rights of way. He does not give the basis of the value, nor was it based upon evidence submitted in the case. Certainly, if the highways had not been established the values of these lands would have been much less. Nor does he state whether the values estimated are those when the easements were first granted or as of the present time, after the values have been enhanced by the building of a highway system throughout this state.

This court, in the State Land case (Conway), supra, made two fundamental determinations:

1. It was held that as a matter of law the grant of nonrental rights of way for the purpose of constructing the kind of roads involved in that case resulted in an over-all benefit to school trust lands.

2. It was held that where there is such a benefit the State Land Department must grant the requested rights of way free of charge.

We certainly agree that, in making a determination as to whether the proposed construction would result in an over-all benefit to trust lands, such determination must be made upon all of the trust lands as a whole, rather than taking them parcel by parcel. The Land Commissioner, in his memorandum, asked the question: If highway construction by states and counties improves the lands that the highways cross, why, then, is it ever necessary for compensation to be paid to a private land owner when his land is taken? Private lands are in a different category from these trust lands. Private lands are in relatively small tracts, and the value of the right of way to the owner is frequently out of proportion to the benefit to him, while, as we have held, the determination of benefit upon trust lands is made upon the basis of wheth-

er the proposed benefit results in an overall benefit to the trust lands as a whole. The value of these large tracts of trust lands is greatly enhanced by the building of a highway system through and to the same. The two situations are not analogous.

In the Grossetta case, supra, we said: " * * * We think the restrictions in the grant of such lands, as to their disposition or use by the state, were intended to prevent their sacrifice and to obtain for the institutions to be benefited the best and highest price obtainable, and not to prevent or impair the construction of highways necessary for the convenience and comfort of the owners and patrons of such institutions. In Ross v. Trustees of University of Wyoming, 30 Wyo. 433, 222 P. 3, 5, the court said:

" 'The questions in the case concern the right of the Legislature to give to the board of land commissioners the power which it has assumed to exercise under this statute [statute similar to our section 3005, supra]. We think it proper first to consider the contention that the granting of the right of way is prohibited by several provisions of the acts of Congress granting the lands to the state and of the state Constitution. [Here the court sets out the provisions of the Enabling Act with reference to the grant of land to the state of Wyoming and the terms of the acceptance of such grant, which are very much like ours.] However, we cannot for a moment believe that it was intended that the restriction on the use of the lands should interfere with the establishing of public roads across them.

" 'The power of a state to provide highways for public use has been likened to the power of taxation and said to be well-nigh as essential to the existence of government. Courts do not hold that the power has been surrendered except in those cases where there appears the deliberate purpose of the state to abandon it. Cincinnati v. Louisville & N. R. Co., 223 U.S. 390, 405, 32 S.Ct. 267, 56 L.Ed. 481, quoting the following forceful language of Mr. Chief Justice TANEY in the Charles River Bridge [v. Warren Bridge] Case, 11 Pet. 420, 547 (9 L.Ed. 773):

" ' "But the object and end of all government is to promote the happiness and prosperity of the community by which it is established; and it can never be assumed, that the government intended to diminish its power of accomplishing the end for which it was created. And in a country like ours, free, active, and enterprising, continually advancing in numbers and wealth, new channels of

communication are daily found necessary, both for travel and trade, and are essential to the comfort, convenience, and prosperity of the people. A state ought never to be presumed to surrender this power, because, like the taxing power, the whole community have an interest in preserving it undiminished." * * ' "
51 Ariz. at 251, 75 P.2d at 1032.

The Land Commissioner contends that the material sites damage the land upon which they are located. Our statutes at the time under which the State v. State Land, supra, decision was made was substantially the same as at the present time. In that case we held:

"We do not find anywhere in the statutes that the legislature has in terms required the state to pay a rental or royalty on the sand, rock, gravel, or natural products from these lands used in the construction of highways. Nor is there any duty imposed upon the land commissioner by the law to collect such rentals or royalties." 62 Ariz. at 255, 156 P.2d at 904.

There was no evidence presented in the case in regard to these material sites. It is plain that both the granting of the rights of way and the material sites enable the building of highways, and are of material benefit to the trust lands as a whole, and enhance the value thereof.

For the reasons as set forth, we hold that it is the duty of the Land Commissioner to grant, without compensation, material sites on, and easements for rights of way over state lands held in trust by virtue of the Enabling Act of Arizona.

We, therefore, order that the writ of prohibition be made permanent.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., BERNSTEIN, J., and HOWARD F. THOMPSON, Judge, concurring. (Justice JESSE A. UDALL having disqualified himself, Judge HOWARD F. THOMPSON sat in his stead.)