416 P.2d 989

**STATE LAND DEPARTMENT, Appellant,**

v.

**PAINTED DESERT PARK, INC., Appellee.***

**No. I CA–CIV 296.**

Court of Appeals of Arizona.

Aug. 3, 1966.

Rehearing Denied Sept. 20, 1966.
Review Granted Oct. 18, 1966.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 7752. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., by Dale R. Shumway, Asst. Atty. Gen., for appellant.

Earl Platt, St. Johns, for appellee.

MOLLOY, Judge.

This is an appeal from a judgment of the superior court entered on appeal from a decision of the Board of Appeals of the State Land Department, against the State of Arizona, awarding $48,000 to the appellee as reimbursement for improvements made on state lands during the existence of a valid lease.

The appellee and his predecessors leased a parcel of state school land for commercial purposes for many years. The land abutted US Highway 66. The appellee improved the land and developed a trading post business thereon. Over the years the annual rent which the appellee paid the state for the use of the land increased from $19.50 to

$1,000. By its terms the appellee's lease was to expire in June of 1960. Two years prior to the expiration date the State Land Department granted an easement for a non-access highway to the State of Arizona on application of the State Highway Department. The easement granted was approximately one-half mile away from appellee's property. US Highway 66 was moved to this new location, the old highway was physically obliterated and there was no way to get to the improvements on the leased land by public road. Thereafter, no actual commercial use was made of the leased property for the last two years of the term of the lease. Nevertheless the appellee made timely application for renewal of his lease and rendered payment of the annual rental for the renewal period which was duly receipted by the State Land Department.[1] The State Land Commissioner, however, denied the appellee's renewal application on the grounds that it was not in the best interest of the state to continue leasing the subject land for commercial purposes since the land could not be used for the purpose applied for, and on the further ground that it was " * * * to the best interest of the State to restore subject land to the public domain of the United States for National Park purposes, and then in exchange, obtain public domain land of equal value within Navajo or Apache County, from which the schools of the State can derive a benefit."

The decision of the State Land Commissioner provided:

"THEREFORE IT IS ORDERED that the improvements existing on the land hereinabove described are appraised as having no fair market value.

"IT IS FURTHER ORDERED that Painted Desert Park *is not entitled to reimbursement for improvements.*" (Emphasis added)

The Board of Appeals, in review of the Commissioner's decision, affirmed that de-cision and further ordered that the appellant was entitled to remove from the leased premises certain removable improvements including a walk-in refrigerator, a pipeline and petrified wood. Subsequently the appellee appealed to the superior court pursuant to A.R.S. § 37–214 which provides in part:

"E. * * * The appeal shall be heard de novo at the earliest practical time by the court without a jury. The court shall hear evidence, make independent findings of fact and conclusions of law from the evidence submitted, and shall either affirm, reverse or modify the decision appealed from. The decision of the superior court may be appealed to the supreme [2] court in the manner appeals are allowed to that court from final judgments in civil actions."

The superior court rendered judgment affirming the decision of the State Land Commissioner denying appellee's application to renew its lease but reversing the decision of the Board of Appeals of the State Land Department denying the appellee reimbursement for improvements, and ordering:

* * * * * *

"3. That Appellant have and recover Judgment against the State of Arizona, to be paid in the manner provided by law, for the value of Appellant's reimbursable improvements as follows:

"Buildings as shown in Appellant's list of improvements filed with the State Land Department $37,000.00

"Less cost of necessary repairs 3,000.00

"Net Valuation for reimbursement purposes 34,000.00

"Land leveling at business site including imported gravel 8,500.00

---

1. The advance rental was subsequently refunded.

2. We accept jurisdiction under the provision of A.R.S. § 12–120.21, subsec. A, par. 2.

"'Buried pipe line on leased premises                 4,700.00

"Walkin box not removable *without* destruction of building                             800.00

"Total reimbursable value · of improvements          $48,000.00"

At the trial before the superior court, -appraisers for the state took the view that improvements on the subject property had ·no value, because the lack of access to the improvements deprived them of market value. Appraisers for the appellee arrived at values sufficient to support the finding of the lower court by using a cost of con- .struction less depreciation basis, ignoring the fact ·that the improvements had no ·practical use after ·the abandonment and ·obliteration of ·the public highway upon which the leased land fronted.

Among ·other attacks made on ap- ·peal, the appellant contends that the superior court erred in rendering judgment .against the State of Arizona. We·have ·concluded that this appeal is determinable .solely on the question of the propriety of the trial court's granting a monetary judg- ·ment against the State of Arizona and up- ·on jurisdictional principles which we raise on our own motion. Ginn v. Superior ·Court, in and for County of Pima, 1 Ariz. App. 455, 404 P.2d 721 (1965). We there- ·fore decline to comment on the other issues raised.

In solving the problems before this ·court, we believe it essential to keep in mind the nature of this proceeding. This is not an action arising in the superior ·court under the broad, general jurisdiction ·of that court, but rather an appeal from .an administrative agency. As such, we believe that the superior court on appeal could not enter a judgment which the administrative agency below had no authority to enter.

The superior court has jurisdiction to try, de novo, on appeal, matters -arising before the State Land Depart- ·ment and decided therein. A.R.S. § 37–214.

Williams v. Greene, 95 Ariz. 378, 390 P.2d 907 (1964); Montierth v. State Land Department, 84 Ariz. 100, 324 P.2d 228 (1958). But, appellate jurisdiction is circumscribed by statute. Knape v. Brown, 86 Ariz. 158, 342 P.2d 195 (1959). A.R.S. § 37–214 provides only that the superior court, on trial de novo " * * * shall either affirm, ·reverse or modify the decision appealed from." Consideration of a similar provision relating to the Arizona Corporation Commission (A.R.S. § 40–254) led the Supreme Court, in Arizona Corporation Comm. ·v. Fred Harvey Transp. Co., 95 Ariz. 185, 388 P.2d 236 (1964), to conclude:

" * * * the hearing before the superior court is *de novo* and we have construed this to mean the superior court must exercise an 'independent judgment'. * * * This only means that the trial court is empowered to reach an independent conclusion. It does not mean that the superior court may enter a judgment independent and· free of the confining language of the statute."
95 Ariz. at 190–191, 388 P.2d at 239.

In Rojas v. Kimble, 89 Ariz. 276, 361 P.2d 403 (1961), our Supreme Court said:

"While a trial de novo means a new trial as though it were one of original jurisdiction in the superior court, this does not mean that the superior court may treat the action as though it had actually been commenced therein in order to escape jurisdictional limitation imposed by the Constitution or statutes. *Jurisdictional limitations to hear and determine the case remain the same as were imposed upon the court from which the appeal arose.* The appellate jurisdiction of the superior court may not be enlarged by pointing to that court's original jurisdiction which might have been invoked had the proceeeding been initiated there." (Emphasis added) 89 Ariz. at 279, 361 P.2d at 406.

We believe the substance of this law limiting the jurisdiction of an appellate tribunal to be equally applicable to the au-

thority of the Board of Appeals of the State Land Department, to which body this proceeding was originally appealed under the provisions of A.R.S. § 37–214, subsec. A from a decision of the State Land Commissioner. We are thus faced with the question as to whether the State Land Commissioner is authorized to render a judgment " * * * against the State of Arizona, to be paid in the manner provided by law" under the circumstances presented here.

Regarding administrative authority, the Supreme Court in Kendall v. Malcolm, 98 Ariz. 329, 404 P.2d 414 (1965), made the following pronouncement:

"But the rule is that administrative officers and agencies have no common law or inherent powers, Gardner v. Ewing, D.C., 88 F.Supp. 315; Howell Sch. Bd. Dist. No. 9 v. Hubbartt, 246 Iowa 1265, 70 N.W.2d 531; State ex rel. Adams v. Burdge, 95 Wis. 390, 70 N.W. 347 [37 L.R.A. 157]; Kasper v. O'Connell, 38 Misc.2d 3, 237 N.Y.S.2d 722. * * * The powers and duties of an administrative agency are to be measured by the statute creating them. Pressley v. Industrial Commission, 73 Ariz. 22, 236 P.2d 1011; Magma Copper Co. v. Arizona State Tax Commission, 67 Ariz. 77, 191 P.2d 169."
98 Ariz. at 334, 404 P.2d at 417.

This case states the general law:

"Administrative determinations must have a basis in law, and must be within the authority granted to the agency; and a decision or order will be invalid if the power or authority of the agency is exceeded."

73 C.J.S. Public Administrative Bodies and Procedure § 142, pp. 471–472

■ General principles governing reimbursement for improvements to leased lands influence our decision. The rights and liabilities of a lessee of school land are in general the same as those of a lessee of any other lands. 73 C.J.S. Public

Lands § 111, p. 756. A landlord is not liable to his tenant for the value of improvements voluntarily made by the tenant in the absence of a statute or agreement imposing such liability. 51 C.J.S. Landlord and Tenant § 399, p. 1141. A tenant is entitled to compensation for improvements made upon the leased lands if he comes within the terms of a statute providing for such compensation. 51 C.J.S. Landlord and Tenant § 400, p. 1147. We believe we must determine whether or not the appellee comes within the terms of a statute providing for compensation from the State of Arizona for the improvements made upon the state's trust lands.

Reimbursement for improvements in certain specified circumstances is clearly contemplated by the laws of this state. Article 4 of Title 37, A.R.S., empowers the State Land Department to lease public lands for agricultural, grazing, commercial and homesite purposes for limited periods and subject to the Constitution and laws of the State of Arizona and the rules and regulations of the State Land Department. (A.R.S. § 37–281). Article 5, Chapter 2 of Title 37, A.R.S., allows for the placement of improvements on state lands by lessees, permittees and others, with permission of the State Land Department. The State Land Code (Title 37) provides for reimbursement for improvements to state lands (1) from a subsequent lessee (A.R.S. § 37–293), (2) from a purchaser (A.R.S. § 37–242), or (3) from the state where the lands are "taken over" for state uses. (A.R.S. §§ 37–441 and 37–442). The only statutory law appearing to have possible pertinency are these latter sections which read as follows:

"§ 37–441. Taking by state of state lands and improvements; reimbursement of owners for improvements; lease by department or institution

"The state may, when necessary for its uses or for the uses of any state department or institution, take over any state

lands and the improvements thereon by reimbursing the owners for the improvements, and the department or institution so using the lands shall lease them and pay such rental as the state land department requires."

"§ 37–442. Application by department or institution to take over state lands; approval by governor; compensation of lessee for improvements and damages resulting from termination

"A. The governing board or officer of a state department or institution desiring to avail itself of the provisions of this article shall make application to the governor for taking the lands over, and, if the application is approved by the governor, it shall be transmitted to the state land department which shall appraise the improvements on the lands.

"B. The existence of a permit or lease for the land desired shall not bar the state from taking the land, but the permittee or lessee shall be entitled, in addition to the appraised value of the improvements on the lands, to reasonable compensation for damages he may sustain by reason of the cancellation of the permit or lease prior to its termination. Such damages shall be determined as a part of the appraisal.

"C. Upon surrender of the lands to the state, the owner of the improvements shall be paid in the manner provided by law the appraised value thereof and the amount of the damages. The owner of the improvements shall prior to payment file his claim, and certify that the pos-

session of the lands and improvements has been surrendered to the state by all persons having lawful claims thereon."

██ We do not believe that there was a "taking" by the state of the leased lands from the appellee, as contemplated by A.R.S. § 37–441 which would entitle the appellee to reimbursement under A.R.S. § 37–442. We are concerned here with school lands granted to the State of Arizona by section 24 of the Enabling Act of Arizona, June 20, 1910, A.R.S. State ex rel. Arizona Highway Dept. v. Lassen, 99 Ariz. 161, 407 P.2d 747 (1965). These lands and the proceeds thereof are held in trust for the purposes designated in the Enabling Act. Section 28, Enabling Act. The Arizona Constitution cannot be inconsistent with the Enabling Act. Murphy v. State, 65 Ariz. 338, 345, 181 P.2d 336 (1947). The trust established by the Enabling Act, both as to the lands received and their proceeds, has been expressly accepted in section 1, article 10 of the Constitution of Arizona:

"* * * shall be by the State accepted and held in trust to be disposed of in whole or in part, only in manner as in the said Enabling Act and in this Constitution provided * * *"

(section 1, article 10, Arizona Constitution, A.R.S.)

Under this law, it seems clear that if this land has been "taken over" by the state, it is as a trustee and not otherwise. Though the state is authorized to trade trust lands, section 28, paragraph 6, Enabling Act,[3] it is clear that the lands received in trade must be held under the terms of the same trust. Section 28, paragraph 2, Enabling Act.[4]

---

3. "The State of Arizona is authorized to exchange any lands owned by it for other lands, public or private, under such regulations as the legislature thereof may prescribe: Provided, That such exchanges involving public lands may be made only as authorized by Acts of Congress and regulations thereunder. Added June 5, 1936, c. 517, 49 Stat. 1477."

4. "Disposition of any of said lands, or of any money or thing of value directly or indirectly derived therefrom, for any object other than for such particular lands, or the lands from which such money or thing of value shall have been derived, were granted or confirmed, or in any manner contrary to the provisions of this Act, shall be deemed a breach of trust."

■ By its express terms, A.R.S. § 37–441 applies only to a situation when the state has taken over leased land for " * * *its* uses or for the uses of any state department or institution * * *" (Emphasis added.) It provides that " * * * the department or institution so using the lands *shall* lease them and pay such rental as the state land department requires." (Emphasis added.) We do not believe that this statute can pertain to an exchange of trust lands.

Other statutory provisions also indicate the inapplicability of this section. A.R.S. § 37–442, subsec. A provides that the governor must approve the taking over of lands under A.R.S. § 37–441, a procedure not followed here. A.R.S. § 37–442, subsec. C provides that the owner of the improvements on the leased land shall be paid "* * * in the manner provided by law * * *" This is the language of our judgment and the appellee has pointed only to A.R.S. § 37–242, subsec. C as providing the statutory authorization for the payment of the judgment rendered here. Section 37–242 by its express terms applies to the reimbursement for a lessee's improvements when lands " * * * are offered for sale * * *" Section 37–242, subsec. C reads as follows:

"C. Upon surrendering possession of any such land, the owner of the improvements thereof shall file with the state auditor his claim for the balance on the improvements remaining unpaid, and if the claim bears the approval of the department as to correctness, and a certificate that possession of the lands and improvements has been surrendered by all persons having lawful claims for improvements on the land, *it shall be paid by the state treasurer on the warrant of the auditor from any fund in which there is money subject to investment. As payments for the improvements are made by the purchaser, they shall be deposited with the state treasurer and both principal and interest shall be returned by him to the fund from which they were taken.*" (Emphasis added)

■ It is apparent that it is of the very essence of this provision that there is to be reimbursement by the purchaser of the land into the fund used by the state treasurer for the payment of the improvements. We accordingly believe that the provisions of A.R.S. § 37–242 are not pertinent to the instant case, in which we have no purchaser.

■ We have further indication in our land code that there is no power in the State Land Commissioner to appraise improvements and order reimbursement except as to a purchaser or subsequent lessee.

The authority of the State Land Commissioner to appraise lands and improvements is contained in A.R.S. § 37–132, reading in part:

"§ 37–132. Powers and duties

"A. The state land commissioner shall:

* * * * * *

"5. Classify and appraise all state lands, together with the improvements thereon, *for the purpose of sale or lease.*" (Emphasis added)

The legislature has authorized appraisals for purposes of the sale of state lands (Title 37, Chapter 2, Article 3 of A.R.S.) and for leasing purposes (Title 37, Chapter 2, Article 4). We find no express authority given to the State Land Commissioner to appraise improvements other than when lands are sold or re-leased. Generally, the authority of the State Land Commissioner has been strictly construed by our courts. Ernst v. Superior Court, 82 Ariz. 17, 307 P.2d 911 (1957); State v. Drew, 83 Ariz. 91, 316 P.2d 1108 (1957).

In an analogous situation, the Supreme Court refused to uphold the contention of the State Land Commissioner that the State of Arizona is required to compensate the state land trust for material sites essential to the construction of highways. State ex rel. Conway v. State Land Department, 62 Ariz. 248, 156 P.2d 901 (1945), and State v. Lassen, supra. In part, these

decisions were predicated on the absence of statutes requiring such payments. " 'We do not find anywhere in the statutes that the legislature has in terms required the state to pay a rental or royalty on the sand, rock, gravel, or natural products from these lands · used in the construction of highways.' " 99 Ariz. at 168, 407 P.2d at 751.

■ Reviewing all enactments of the legislature, we find no provision for appraisal of improvements by the State Land Commissioner and for reimbursement from the state when the state has exercised its discretion in refusing to renew a lease on the basis of the best interests of the state. We conclude that there was no jurisdiction in the superior court on appeal to reappraise and order reimbursement.

■ In its answering brief, the appellee has asked this court to reverse the decision rendered below to the effect that the failure to renew appellee's lease was proper. However, the appellee filed no cross-appeal. The decision of the Board of Appeals in this regard having been affirmed below, and no cross-appeal having been taken, this decision is immune from attack here. Maricopa County v. Corporation Commission of Ariz., 79 Ariz. 307, 310, 289 P.2d 183 (1955).

■ On the merits, we reach the same result. After the access to this property had been destroyed by governmental agencies other than the State Land Department, it was obviously no longer economically feasible to lease this land for commercial purposes. The granting of the easement for road purposes by the State Land Department was a matter over which it had no control. State ex rel. Arizona Highway Department v. Lassen,

99 Ariz. 161, 407 P.2d 747 (1965); State ex rel. Conway v. State Land Department, 62 Ariz. 248, 156 P.2d 901 (1945); Grossetta v. Choate, 51 Ariz. 248, 75 P.2d 1031 (1938). The decision to not renew the subject commercial lease seems mandated by the record and the applicable law. Equally pertinent, the nonrenewal of this lease does not appear to be the cause of appellee's damage, but rather the establishment and abandonment of the public highways involved, a matter not within the jurisdiction of the State Land Department.

■ The trial court, as manifested by its findings of fact,[5] was evidently of the opinion that the real injury sustained by the lessee was the loss of access which effectively terminated commercial use of the land, but concluded that the question of relief for such injury was not before the court. We are in agreement.

It has been held that decisions of the State Land Department should be accepted by the superior court, on trial de novo, unless unsupported by or contrary to the evidence, a result of fraud, or a misapplication of the law. Manning v. Perry, 48 Ariz. 425, 62 P.2d 693 (1936). In this instance the superior court has misapplied the law in finding that the appellee was entitled to reimbursement. The judgment of the superior court, being contrary to law, must be reversed and the order of the State Land Department reinstated.

KRUCKER, C. J., and HATHAWAY, J., concurring.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. section 12-120, subsec. E.

---

5. Among the findings of fact was No. 5, which reads:
   "5. That the matter of damages resulting from the substantial cancella-tion of said lease, as set out in the previous conclusion however, cannot be determined on this appeal."